1  Tara J. Schleicher, OSB No. 954021
   Dan Youngblut, OSB No. 211148
2  FOSTER GARVEY P.C.
   121 SW Morrison St., 11th Floor
3  Portland, OR 97204
   Telephone: (503) 228-3939
4  Facsimile: (503) 226-0259
   Email: tara.schleicher@foster.com
5         dan.youngblut@foster.com
   *Proposed Attorneys for Debtor*
6

7

8

9                UNITED STATES BANKRUPTCY COURT
                      DISTRICT OF OREGON

10  In re:                              Case No. 23-31455-dwh11

11  Saturno Design, LLC.[1]

12                 Debtor.              **DEBTOR'S SECOND AMENDED
                                        CHAPTER 11 PLAN OF
                                        REORGANIZATION**
13

14         Debtor's Second Amended Chapter 11 Plan of Reorganization (as may be amended or

15  modified from time to time, the "Plan") proposes to pay general unsecured creditors of debtor

16  Saturno Design, LLC (the "Debtor" or "Saturno") over the Plan Period (as defined below). This

17  Plan is an amended version of Debtor's Chapter 11 Plan of Reorganization [Dkt. No. 4], filed on

18  July 3, 2023 (the "Original Plan"), and of Debtor's First Amended Chapter 11 Plan of

19  Reorganization [Dkt. No. 39], filed on July 24, 2023 (the "First Amended Plan"). The

20  amendments in this Plan, relative to the First Amended Plan, only affect sections 9.2 (Injunction)

21  and 9.4 (Exculpation) of the Plan (including the related removal of the defined term "Exculpated

22  Parties"). None of these changes impact the treatment of any Claims against Debtor or any

23  substantive terms of the Plan or adversely affect any rights of such the Holders of such Claims or

24  any other parties in interest. A redline showing the changes in this Plan relative to the First

25  Amended Plan is attached hereto as Exhibit F. This Plan provides for one class of Secured

26  Claims, three classes of Unsecured Claims, and one class of Equity Interests. The Debtor

27  _____
    [1]  The last four digits of Debtor's federal tax identification number is 3750.

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

reserves all rights available under the Bankruptcy Code and any applicable law to amend this Plan from time to time for any reason.

Because the Debtor is a "small business debtor" under section 101(51D) of the Bankruptcy Code that has elected to file under Subchapter V of the Bankruptcy Code, the Debtor is not required to obtain approval of a disclosure statement prior to soliciting votes from creditors and equity interest holders unless the Bankruptcy Court, for cause, orders otherwise.

***The rights of creditors of the Debtor will be impacted by this Plan. All holders of Claims against the Debtor are encouraged to read this Plan in its entirety before voting to accept or reject this Plan and should review this Plan carefully for information regarding the specific treatment of their Claims. <u>All holders of Claims against the Debtor should discuss this Plan with their own attorneys or legal counsel</u>.***

***Your ballot stating how you are voting on the Plan with respect to your Claims against the Debtor must be received by the Debtor, c/o Foster Garvey PC, Attn: Tara Schleicher, 121 SW Morrison Street, 11th Floor, Portland, OR 97204, by no later <u>August 23, 2023</u>. If the Plan is confirmed, you will receive the treatment set forth in the Plan with respect to your Allowed Claim(s) (if any) and will be subject to the injunction imposed by the Confirmation Order.***

***In addition to casting your vote to accept or reject the Plan, you may object to confirmation of the Plan. If you wish to object to confirmation of the Plan, you must do so by <u>August 23, 2023</u>. The confirmation hearing will be held in the Bankruptcy Court on August 30, 2023 by video conference pursuant to the procedures set forth in .***

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939 FAX (503) 226-0259

## TABLE OF CONTENTS

**ARTICLE I: DEFINED TERMS** ........................................................4

**ARTICLE II: BACKGROUND, CHAPTER 11 CASE, AND DISCLOSURES** ............11

**ARTICLE III: CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS** ..........19

**ARTICLE IV: TREATMENT OF CLAIMS AND INTERESTS** ....................................20

**ARTICLE V: INTERESTS AND RIGHTS TO BE RETAINED** ...................................25

**ARTICLE VI: IMPLEMENTATION OF THE PLAN, ETC.** ...........................................25

**ARTICLE VII: CLAIMS AND INTERESTS** ........................................................31

**ARTICLE VIII: EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ............32

**ARTICLE IX: EFFECT OF CONFIRMATION, DISCHARGE, AND INJUNCTION** 34

**ARTICLE X: RETENTION OF JURISDICTION** ...........................................................35

**ARTICLE XI: GENERAL PROVISIONS** ....................................................................36

**ARTICLE XII: MODIFICATION OF THE PLAN** ........................................................39

**ARTICLE XIII: CONDITIONS PRECEDENT TO EFFECTIVE DATE** ...................39

PAGE 3 OF 40 – DEBTOR'S SECOND AMENDED
CHAPTER 11 PLAN OF REORGANIZATION

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

Case 23-31455-dwh11    Doc 67    Filed 08/29/23

## ARTICLE I:  DEFINED TERMS

As used in this Plan, capitalized terms have the meanings set forth below (unless defined elsewhere in this Plan).  Any capitalized terms used but not defined in this Plan shall have the meanings given to such terms in the Bankruptcy Code or the Bankruptcy Rules (if any), or shall otherwise have their ordinary meanings or such meaning as context may require.

1.1.    "Acquisition Agreement" means that certain Acquisition Agreement dated as of September 9, 2016 between Lotus and Sellers.

1.2.    "Administrative Claim" means an expense of the kind described in section 503(b) of the Bankruptcy Code including (though not limited to), for the avoidance of doubt, (x) any Claims relating to Professional Fees and Expenses and (y) the Subchapter V Trustee Claim.

1.3.    "Allowed" means, with respect to any Claim, the status of the Claim, such that: (a) the Claim is specially allowed under this Plan, the Bankruptcy Code, or by a Final Order; (b) upon expiration of the Claims Objection Date, the Claim, whether filed or scheduled, has not been disputed; or (c) with respect to Disputed Claims, a Final Order allowing the Claim has been entered or the Debtor and the Claimant have reached agreement on the amount and priority/classification of the Claim.

1.4.    "Allowed Amount" means (a) the amount of the Claim scheduled by the Debtor if (i) the Claim is not scheduled as disputed, contingent, or unliquidated by the Debtor, (ii) no objection to that amount is filed by the Claims Objection Date, and (iii) the Holder of the Claim has not timely filed a properly prepared proof of Claim in an amount different than that scheduled by the Debtor; (b) the amount set forth by the Holder of a Claim in a timely filed and properly prepared proof of Claim if that amount differs from the mount scheduled by the Debtor and no objection to the amount stated in the proof of Claim is filed by the Claims Objection Date; (c) the amount of such Claim established by a Final Order of the Court if (i) such Claim is scheduled by the Debtor as contingent, disputed, or unliquidated, (ii) an objection to that amount is filed on or before the Claims Objection Date, or (iii) if the amount set forth by the Holder of such Claim in a timely filed, properly prepared proof of Claim differs from the amount scheduled

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

by the Debtor and an objection is filed to the proof of Claim on or before the Claims Objection Date; or (d) the amount of such Claim as expressly provided for by this Plan.

1.5.    "Allowed Secured Claim" means an Allowed Claim arising on or before the Petition Date that is secured by a valid Lien on Assets of the Debtor which is not void or avoidable under any state or federal law, including any provision of the Bankruptcy Code.

1.6.    "Assets" means all property that is property of the Debtor under section 541 of the Bankruptcy Code, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, all Causes of Action and all proceeds and recoveries on Causes of Action, all accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interest in real estate.

1.7.    "Ballot" refers to that certain ballot intended for Holders of Claims in Classes 1, 2.2, and 3, allowing said Holders to vote to accept or reject this Plan, attached as Exhibit E hereto.

1.8.    "Bankruptcy Code" means title 11 of the United States Code.

1.9.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

1.10.    "Bar Date" means one or more dates established by the Court as the deadline(s) for most creditors to file proofs of Claim in the Chapter 11 Case.

1.11.    "Bozas Declaration" means that certain *Declaration of Rodolfo (Rudy) Bozas in Support of Debtor's First Day Motions and Plan of Reorganization*, which provides evidentiary support for this Plan.

1.12.    "Business" means that certain business owned and operated by the Debtor which, in pertinent part, provides website development and software solutions to the legal industry.

1.13.    "Business Day" means any day except Saturday, Sunday, or a "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.14.    "Cash" means cash and cash equivalents, including checks and other similar items of legal tender of the United States of America.

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

1.15. "Cash Collateral Order" means, collectively, any order from this Court authorizing the Debtor to use Cash Collateral (as such term is defined in such order), whether on an interim, "final," or any other basis.

1.16. "Causes of Action" means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, and license of any kind or character whatsoever belonging to the Debtor or its Estate, whether arising before or after the Petition Date and whether arising under state or federal law.

1.17. "Chapter 11 Case" means the chapter 11 bankruptcy case of Saturno Design, LLC, filed on July 3, 2023, in the Court as case number 23-31455-dwh11.

1.18. "Claim" means "claim" as defined in section 101(5) of the Bankruptcy Code and shall include, without limitation, all rights to payment from the Debtor.

1.19. "Claimant" means any individual or entity making or holding a Claim against the Debtor.

1.20. "Claims Objection Date" means, with respect to Claims not subject to the Postpetition Claims Bar Date, the date that is thirty (30) days from the last to occur of (a) with respect to a specified Claim for which a creditor is allowed to file a proof of Claim after the Bar Date, thirty (30) days after the date on which such proof of Claim is filed; or (b) the Effective Date. The failure to object to a Claim by the Claims Objection Date shall not constitute a waiver, acceptance, or release of any Claim or Cause of Action against a creditor, including any Cause of Action based on a creditor receiving preferential or fraudulent transfers under §§ 547 or 548 of the Bankruptcy Code.

1.21. "Confirmation Date" means the date the Court enters the Confirmation Order.

1.22. "Confirmation Hearing" means the hearing held by the Court to consider confirmation of the Plan, as contemplated by section 1128(a) of the Bankruptcy Code.

1.23. "Confirmation Order" means the order of the Court confirming the Plan.

1.24. "Court" means the United States Bankruptcy Court for the District of Oregon

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

Case 23-31455-dwh11    Doc 67    Filed 08/29/23

before which the Chapter 11 Case is pending, or any other court exercising jurisdiction over the Chapter 11 Case in the future.

1.25. "Cure" means a Claim based upon a Debtor's default(s) under an executory contract or an unexpired lease sought to be assumed by the Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to any relevant provision of the Bankruptcy Code or applicable law.

1.26. "Effective Date" means the first date that the Confirmation Order has become a Final Order and all conditions to the effectiveness of the Plan have been satisfied.

1.27. "Equity Interest" means any membership interest or similar "equity" security or interest in the Debtor.

1.28. "Estate" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code.

1.29. "Final Order" means an order or judgment of the Court as to which the time for appeal has expired and a stay pending appeal has not been issued.

1.30. "Holder" means a person (including any assignees) holding an interest of any kind or Equity Interest in, or Claim against, the Debtor(s), as the context requires.

1.31. "IRS" means the Internal Revenue Service.

1.32. "Lawsuits" means the Seller Lawsuit and the T Bank Lawsuit.

1.33. "Lien" means any mortgage, lien, Claim, interest, encumbrance, security interest, restriction, charge, or assessment, of every kind, nature, and description, against, in or upon Assets, whether recorded or unrecorded, fixed or contingent, perfected or unperfected, possessory or non-possessory, known or unknown, and without limiting the foregoing, includes the meaning set forth in section 101(37) of the Bankruptcy Code.

1.34. "Liquidation Analysis" means that certain Asset Valuations and Liquidation Analysis attached as Exhibit C hereto.

1.35. "Local Bankruptcy Rules" means the Local Rules of Bankruptcy Procedure for the District of Oregon.

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

1.36. "Lotus" means Lotus Digital, LLC, a Florida limited liability company which merged with and into Saturno prior to the petition date.

1.37. "Petition Date" means July 3, 2023, *i.e.*, the date the Debtor filed this Chapter 11 Case.

1.38. "Petition Date Balance Sheet" means that certain balance sheet for the Debtor, dated as of the date as close to the Petition Date as available to the Debtor, attached hereto as Exhibit B.

1.39. "Plan Period" means the time period starting on the Effective Date of this Plan and going through the date on which the Debtor completes the third and final distribution to Holders of Allowed General Unsecured Claims as set forth in Class 3 of the Plan.

1.40. "Plan Period Projections" means those certain revenue, expense, and cash projections attached as Exhibit A hereto.

1.41. "Portland Lease" means that certain lease for real property at 506 SW Sixth Avenue, Suite 600, Portland, Oregon by the Debtor.

1.42. "Postpetition Claims Bar Date" means the date which is sixty (60) days following the Effective Date.

1.43. "Priority Claim" means an Allowed Unsecured Claim, other than an Administrative Claim, granted a priority under section 507 of the Bankruptcy Code.

1.44. "Pro Rata" means proportionate so that, for example, the ratio of the consideration distributed on account of an Allowed Claim to the amount of that Allowed Claim is the same as the ratio of the consideration distributed on account of all Allowed Claims in such class of Claims to the amount of all Allowed Claims in that class.

1.45. "Professional Fees and Expenses" means Allowed Administrative Claims of the retained professionals in the Chapter 11 Case. Professional Fees and Expenses shall not include the Subchapter V Trustee Claim.

1.46. "Projected Disposable Income" means the income that is projected to be received by the Debtor and that is not reasonably necessary to be expended for the payment of

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

expenditures necessary for the continuation, preservation, or operation of the Debtor's business, which such necessary payments shall include, for the avoidance of doubt, the payments to the Holders of Allowed Administrative Claims, Allowed Secured Claims, and Allowed Priority Claims, in accordance with this Plan, and any other payments required or contemplated by this Plan (other than payments of Projected Disposable Income made to the Holders of Allowed General Unsecured Claims in accordance with this Plan), by order of the Court, or pursuant to applicable law in connection with the Chapter 11 Case.

1.47. "Reorganized Debtor" means, on and after the Effective Date, the Debtor as reorganized pursuant to this Plan. References to "Debtor" and "Reorganized Debtor" herein may be used interchangeably and should be evaluated in the context in which such term(s) appears.

1.48. "Saturno" means Saturno Design, LLC, the debtor and debtor-in-possession in this Chapter 11 Case, or the reorganized entity, as the context requires.

1.49. "Saturno Equity Holders" means Eduardo Feo, Moroch Holdings Inc., Creekview Capital, and Pólvora Advertising, Inc., which own 16.0%, 10.0%, 6.75%, and 67.25% ownership interests in Saturno.

1.50. "Saturno Office" means that certain real property leased by Saturno at 506 SW Sixth Avenue, Suite 600, Portland, Oregon.

1.51. "SBA" means the United States Small Business Administration, as the owner and Holder of the SBA Note.

1.52. "SBA Security Agreement" means that certain Security Agreement executed by the Debtor as grantor, for the benefit of SBA as beneficiary, in connection with the SBA Loan.

1.53. "SBA Loan" means that certain SBA EIDL loan in the original principal amount of $162,000.00 as evidenced by the SBA Note and as secured by the SBA Security Agreement.

1.54. "SBA Note" means that certain promissory note that the Debtor made and executed in the original principal sum of $162,000.00.

1.55. "SBA's Deficiency Claim" means an Unsecured Claim held by SBA in the principal amount of $161,918.00 which, by confirmation of the Plan, shall become an Allowed

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

General Unsecured Claim in the amount of $161,918.00.

1.56. "Schedule of Assumed Executory Contracts and Unexpired Leases" means that certain schedule setting forth any executory contracts and/or unexpired leases which the Debtor intends to assume in connection with confirmation of this Plan, attached as Exhibit D hereto. For the avoidance of doubt, the Debtor intends to and reserves the right to update the schedule attached hereto in connection with the filing of an amended plan, including any amended plan filed after passage of the Bar Date.

1.57. "Secured Claim" means, in accordance with section 506(b) of the Bankruptcy Code, a Claim secured by a valid Lien on Assets which is not void or avoidable under any state or federal law, including (without limitation) any provision of the Bankruptcy Code.

1.58. "Sellers' Claim" means a potential Unsecured Claim held by Sellers which is disputed by the Debtor.

1.59. "Seller Lawsuit" means that certain lawsuit proceeding under Case No. 23-CV-12662 in the Multnomah County Circuit Court.

1.60. "Sellers" means Greg Fredette and Allison Noah-Fredette, who sold the equity interests in Saturno to Lotus pursuant to the Acquisition Agreement.

1.61. "Subchapter V Trustee" means Amy Mitchell in her capacity as the subchapter V trustee in this Chapter 11 Case, pursuant to section 1183 of the Bankruptcy Code.

1.62. "Subchapter V Trustee Claim" means the Allowed Claim of the Subchapter V Trustee.

1.63. "Substantial Consummation" means "substantial consummation" as defined in section 1101(2) of the Bankruptcy Code.

1.64. "T Bank" means T Bank, National Association, as the owner and Holder of the T Bank Note.

1.65. "T Bank Lawsuit" means that certain proceeding under Case No. 23-CV-15479 in the Multnomah County Circuit Court.

1.66. "T Bank Security Agreement" means that certain Security Agreement, dated as of

PAGE 10 OF 40 – DEBTOR'S SECOND AMENDED
CHAPTER 11 PLAN OF REORGANIZATION

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

Case 23-31455-dwh11    Doc 67    Filed 08/29/23

August 31, 2016 executed by the Debtor as grantor, for the benefit of T Bank as beneficiary, which was evidenced by a UCC-1 Financing Statement filed on September 21, 2016 as Filing No. 90963721 in with the state of Oregon.

1.67. "T Bank Loan Agreement" means that certain Loan Agreement dated on or about August 31, 2016 between the Debtor (as a co-borrower) and T Bank.

1.68. "T Bank Note" means that certain promissory note that the Debtor made and executed in the original principal sum of $2,472,000.00 pursuant to the T Bank Loan Agreement.

1.69. "T Bank's Deficiency Claim" means an Unsecured Claim held by T Bank which, by confirmation of the Plan, shall become an Allowed General Unsecured Claim in the amount of $475,223.16.

1.70. "T Bank's Secured Claim" means a Secured Claim held by T Bank in the principal amount of $603,205.00 (the value of the Assets, as of the Confirmation Date, on which T Bank has a Lien) with interest to accrue at the federal prime rate in effect on the Petition Date plus 1.0% and which, by confirmation of the Plan, shall become an Allowed Secured Claim in the amount of $603,205.00.

1.71. "Unsecured Claim" means a Claim that is (a) not an Administrative Claim, Subchapter V Trustee Claim, or any Claim relating to Professional Fees and Expenses; and (b) not secured by a valid Lien on Assets which is not void or avoidable under any state or federal law, including (without limitation) any provision of the Bankruptcy Code, and shall include any deficiency Claim related to any Secured Claims (including, for the avoidance of doubt, T Bank's Deficiency Claim and SBA's Deficiency Claim).

1.72. "Working Capital" means the net working capital necessary for the day-to-day operations of the Reorganized Debtor's business.

**ARTICLE II: BACKGROUND, CHAPTER 11 CASE, AND DISCLOSURES**

2.1. **The Debtor and the Nature and History of the Business.**

The Debtor owns and operates the Business, which provides website development and software solutions to the legal industry. For more than 24 years, the Debtor has developed

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

innovative and award-winning branding, design and technology services to American and Canadian law firms ranging in size from small boutique firms to AmLaw 100 firms. The services the Debtor provides to the legal industry include: website design, website/traffic metrics, branding, blogs, content management systems, e-mail marketing systems, event registration, expense management systems, websites, proposal systems, extranets, and search engine marketing. In 2022, Debtor a Muse Creative Silver Award (Website/Law and Legal Services of the Year) and a Vega Award for Debtor's work on the Porzio Bromberg & Newman website along with the firm's content management system and experience proposal center. Debtor's work has also been recognized with awards by W[3] (for work on the K&L Gates website) and LMA (for work on Gray Reed's website). A screenshot of the Debtor's website on the K&L Gates website is attached as <u>Exhibit A</u> to the Bozas Declaration.

The Debtor is an Oregon limited liability company with its principal place of business located at the Saturno Office, which is leased property.

The Debtor's most valuable assets are intangible and include its software solutions and related assets, a good reputation in the website development space among customers in the legal industry, and the human resources which power the Business (*i.e.*, the Debtor's principals and employees). Otherwise, the Debtor's remaining assets consist of cash and accounts receivable, standard office equipment and furniture, personal property of comparatively little value, and the Debtor's interest in the Portland Lease.

The Debtor's liabilities consist primarily of secured, funded indebtedness held by T Bank and SBA (as described in the following section discussing the Loans). The Debtor is also subject to the Seller Lawsuit. The Debtor believes it has meritorious defenses to the claims set forth in the Seller Lawsuit and thereby the Sellers' Claim. Otherwise, the Debtor's liabilities are generally Unsecured Claims which are either expressly set forth herein (if sought to be Allowed pursuant to this Plan) or which will later be Allowed by order of this Court or upon passage of the Claims Objection Date if no objection with respect to such Claim(s) is filed.

Like many businesses across the world, the Debtor suffered as a result of the COVID-19

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

Case 23-31455-dwh11   Doc 67   Filed 08/29/23

pandemic and other exogenous factors, including a challenging macroeconomic environment. The Debtor's revenues, and its ability to service its debts, were also temporarily depressed starting in or about November 2022 when, during the middle of communications with the IRS regarding asserted tax liabilities, the IRS issued a tax levy, notwithstanding that employee retention (ERC) credits owed to the Debtor were of a value several times greater than the asserted tax liabilities. The Debtor also experienced an unfortunate issue whereby its invoicing system indicated that bills had been sent to clients even though such bills had not been sent. The billing problems were also exacerbated by the IRS tax levy. This perfect storm of unfortunate events significantly disrupted the Debtor's operations and impeded cash flow, but are now resolved and will not impact the Business on a go-forward basis.

2.2. **The Loans.**

The Debtor is the borrower under the T Bank Loan Agreement, pursuant to which T Bank made the T Bank Loan to the Debtor in the original principal sum of $2,472,000.00. The T Bank Loan is evidenced by the T Bank Note that the Debtor made, executed, and delivered to T Bank in the original principal sum of $2,472,000.00. The current amount owed under the T Bank Loan is $1,078,428.16.

The Debtor is also the borrower under the SBA Loan, which was in the original principal amount of $162,000.00. The SBA Loan is secured by the SBA Security Agreement executed by the Debtor as grantor, for the benefit of the SBA as beneficiary, which was evidenced by a UCC-1 Financing Statement filed on August 2, 2020 as Filing No. 92509774 with the state of Oregon. The current amount owed under the SBA Loan is $161,918.00.

Under the T Bank Security Agreement and the SBA Security Agreement, the Lenders assert security interests in, among other things, Debtor's equipment, inventory, accounts, instruments, chattel paper, general intangibles, documents, and deposit accounts and related replacements, accessions, proceeds, and products, which includes, among other things, any form of collateral proceeds which have been reduced to cash.

2.3. **The Lawsuits.**

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

On March 24, 2023, Sellers sued Lotus, Saturno, and Rudy Bozas for breaches of the Acquisition Agreement, certain promissory notes incurred in connection therewith, and the personal guaranty of Rudy Bozas. The Seller Lawsuit ostensibly seeks $1,265,043 in damages. A copy of the complaint filed in the Seller Lawsuit is attached to the Bozas Declaration as Exhibit B.

On April 14, 2023, T Bank sued Lotus, Saturno, Cristina Bozas, Rudy Bozas, Luigi Segreto, and Pólvora for default under the T Bank Note and guarantees relating thereto. The T Bank Lawsuit ostensibly seeks $1,107,591 in damages. A copy of the complaint filed in the T Bank Lawsuit is attached to the Bozas Declaration as Exhibit C.

The Debtor believes it has meritorious defenses in both the Seller Lawsuit and the T Bank Lawsuit, and nothing contained in this Plan or elsewhere should be construed as an admission of liability or otherwise with respect to either the Seller Lawsuit and the T Bank Lawsuit, but rather should be treated with the same protections and understanding afforded to settlement communications under Federal Rule of Evidence 408, and the Debtor expressly reserves all rights in connection with the Seller Lawsuit and the T Bank Lawsuit.

2.4. **The Merger**.

On or about June 22, 2023, I and other necessary signatories approved a merger whereby Lotus merged into Saturno, with Saturno (*i.e.*, the Debtor) being the surviving entity. The merger was consummated effective as of or about June 26, 2023, and is intended to streamline this chapter 11 reorganization process by avoiding the need for two separate cases. Moreover, the claims asserted against both entities are substantially similar, if not close to identical, and Lotus had no assets (including no cash or bank account) as of the time of the merger.

2.5. **Reorganization Strategy in Chapter 11 Case**.

The Debtor's principal objectives are to delever its balance sheet and restructure its finances and operations so that the Debtor can emerge from this Chapter 11 Case well-positioned for long-run success. The Debtor believes the Plan allows them to achieve sufficient cash flow from business operations to satisfy operational expenses and payment obligations under the Plan.

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

Although it is impossible to predict with any degree of certainty, the Debtor generally anticipates that business operations of the Reorganized Debtor will be substantially similar to the business operations of the Debtor prior to the Petition Date; *provided, however*, that nothing in the Plan shall prohibit, or be construed to restrict or prohibit, the Debtor from altering its business model in the future, including by selling some or all of the Assets or developing or providing new services or products to its customers.

The Debtor anticipates moving quickly during this Chapter 11 Case to achieve its restructuring goals. The Debtor filed the Original Plan on the first day of the Chapter 11 Case as well as necessary and standard "first-day" bankruptcy motions, and has now filed this amended Plan. A confirmation hearing for this Plan is set for August 30, 2023.

2.6. **Liquidation Analysis, Liens, and Asset Values.**

The Liquidation Analysis, attached hereto as <u>Exhibit C</u>, sets forth the Debtor's best understanding of the net proceeds that would be received for each Asset if the Debtor undertook a hypothetical liquidation under chapter 7 of the Bankruptcy Code, and the identity of the Holder(s) of a Lien, if any, on such Asset. The alternative to the Plan is the liquidation of the Assets in a proceeding under chapter 7 of the Bankruptcy Code, and the distribution of the net proceeds thereof to secured, administrative, priority, and unsecured creditors in the order of priority and manner provided for in the Bankruptcy Code. This would generally require that secured creditors be paid in full first, then administrative expense creditors, priority creditors, and unsecured creditors (in that order).

Although it is impossible to determine the exact liquidation value of the Assets in a true fire-sale context, for purposes of this Liquidation Analysis, the Debtor estimates that the liquidation value of the Debtor's Assets is $519,274.30. In addition to this liquidation value, a chapter 7 trustee may evaluate prepetition transfers to determine any such transfers may be potential preferential payments made by the Debtor in the ninety (90) days prior to the Petition Date or fraudulent transfers. Based on an evaluation of the Debtor's prepetition activities and transfers, however, the Debtor does not believe there are any viable claims to bring, either

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939 FAX (503) 226-0259

because of the de minimis amount of the transfers or the anticipated defenses to any such claims. For these reasons, the Debtor does not ascribe any value to such hypothetical claims that a chapter 7 trustee may pursue.

Accordingly, if the Assets were liquidated in a chapter 7 proceeding and the resulting cash made available to the Debtor's creditors, the Liquidation Analysis indicates that Holders of Allowed Secured Claims would obtain all of the value from such liquidation efforts, resulting in zero recovery for the Holders of Allowed Unsecured Claims. By contrast, this Plan provides for the possibility, depending on the Debtor's finances and operations over the Plan Period, for some meaningful recovery for the Holders of Allowed Unsecured Claims. For this reason, confirmation of the Plan will result in an enhanced return to all creditors, and thus will serve the creditors' best interests compared to the alternative of a chapter 7 liquidation.

2.7. **T Bank's Secured Claim; SBA's Deficiency Claim.**

The Plan provides for the allowance of T Bank's Secured Claim in the Allowed amount of $603,205.00. This figure is the Debtor's best estimate of the value of the Business, which accounts for all or substantially all of the Debtor's Assets, is $603,205. This accounts for the revenue-generating potential for a Business. Because the value of $603,205 is inadequate to cover the entirety of T Bank's Claim, T Bank's Claim is bifurcated into T Bank's Secured Claim (Class 1) and T Bank's Deficiency Claim (treated in Class 3). T Bank disagrees with the Debtor's valuation of the Business and believes that the appropriate value is closer to $1 million. Therefore, the Allowed amounts of T Bank's Secured Claim and T Bank's Deficiency Claim may change between the date hereof and the date of the Confirmation Hearing as a result of either a ruling from this Court on the Allowed amount of T Bank's Secured Claim or an agreement between the Debtor and T Bank as to such Allowed amount. An increase in the Allowed amount of T Bank's Secured Claim or a change in the manner in which T Bank's Secured Claim is paid under the Plan may result in less Projected Disposable Income being available to distribute to the holders of Allowed General Unsecured Claims.

Additionally, SBA's Claim is entirely unsecured because its apparent security is the later-

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

in-time SBA's Security Agreement, which covers substantially the same collateral as the earlier-in-time T Bank's Security Agreement. Therefore, SBA's entire Claim is SBA's Deficiency Claim (treated in Class 3).

2.8. **Feasibility Analysis; Projected Disposable Income; Plan Period Projections.**

The Debtor respectfully submits that the Plan is feasible. The Debtor has prepared the Plan Period Projections attached hereto as <u>Exhibit A</u>. The Plan Period Projections provide for the payment Allowed Claims pursuant to this Plan and are otherwise based on historic and anticipated future operations, using conservative and justifiable assumptions. Of course, actual revenue and expenses may vary from those set forth on the Plan Period Projections. Nevertheless, based on the projections set forth in the Plan Period Projections, the Plan is not likely to be followed by the liquidation of the Debtor or the need for any further reorganization, and the Reorganized Debtor is able and likely to make the payments required under this Plan.

As required by section 1191(c) of the Bankruptcy Code, the Plan provides that all of the Debtor's projected disposable income for a period of at least three years is committed to paying the Holders of Allowed Claims under the Plan. The defined term "Projected Disposable Income" as used in this Plan already accounts for payments to the Holders of Allowed Administrative Claims, Allowed Secured Claims, and Allowed Priority Claims, in accordance with this Plan and therefore refers herein to the amount of Projected Disposable Income available to distribute to the Holders of Allowed General Unsecured Claims.

As set forth on the Plan Period Projections attached hereto, such Projected Disposable Income is, for the period of October 1, 2023 (the assumed Effective Date) through December 31, 2026, equal to $114,225, broken down as follows: for the period of January 1, 2024 through December 31, 2024, $77,603; for the period of January 1, 2025 through December 31, 2025, $30,022; and for the period of January 1, 2026 through December 31, 2026, $6,600. Additional details supporting these calculations of Projected Disposable Income are set forth on the Plan Period Projections attached hereto.

2.9. **Status of Claim Objections.**

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

The Debtor is continuing to evaluate potential objections to Claims consistent with the deadlines and requirements set forth in this Plan. At this time, and reserving all rights, the Debtor anticipates that the principal or perhaps only dispute with respect to the Claims that have been asserted against the Debtor is with respect to how much of the claim asserted by T Bank is secured (and therefore the quantum of T Bank's Secured Claim) and how much is unsecured (and therefore the quantum of T Bank's Deficiency Claim).

The Debtor has not identified additional objections to Claims at this time, but reserves the right to file objections in the future as provided for in this Plan.

2.10. **Voting to Accept or Reject the Plan.**

Only Holders of Claims in classes that are "impaired" by the Plan are entitled to vote on the Plan. If you are entitled to vote, enclosed with this Plan is a Ballot for your use in voting to accept or reject the Plan. The Debtor encourages you to vote to accept the Plan. For your vote to count, your properly completed and executed Ballot must be received by no later than 5:00 P.M. (prevailing Pacific Time) on <u>August 23, 2023</u>, at the office of the Debtor's counsel:

Foster Garvey P.C.
Attn: Tara J. Schleicher, Esq.
121 SW Morrison Street, 11th Floor
Portland, OR 97204-3141
Email: tara.schleicher@foster.com

**EACH CREDITOR SHOULD NOTE THAT IF ANY CLASS OF CLAIMS FAILS TO ACCEPT THE PLAN BY THE REQUISITE MAJORITIES, THE COURT MAY NEVERTHELESS ENTER AN ORDER CONFIRMING THE PLAN. THE REQUIREMENTS FOR OBTAINING SUCH AN ORDER ALLOW THE COURT TO ENTER SUCH AN ORDER IF, AFTER NOTICE AND A HEARING, THE COURT FINDS THAT THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AND IS FAIR AND EQUITABLE WITH RESPECT TO ANY IMPAIRED CLASS OF CLAIMS OR EQUITY INTERESTS WHICH HAS NOT ACCEPTED THE PLAN. IF ANY CLASS OF CLAIMS FAILS TO ACCEPT THE PLAN BY THE REQUISITE MAJORITIES, THE DEBTOR**

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

**SHALL SEEK SUCH AN ORDER CONFIRMING THE PLAN NOTWITHSTANDING THE FAILURE OF AN IMPAIRED CLASS TO ACCEPT THE PLAN.**

    2.11.  **Tax Consequences of the Plan.**

The federal, state, and local tax consequences of the Plan may be complex and, in some cases, uncertain. Such consequences may also vary based upon the individual circumstances of each Holder of a Claim or Equity Interest. **EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, AND/OR LOCAL TAX CONSEQUENCES OF THE PLAN. THIS PLAN MAY NOT BE RELIED UPON FOR, AND SHALL NOT BE DEEMED TO CONSTITUTE, ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN.** Any federal or state withholding taxes or other amounts required to be withheld under any applicable law may be deducted and withheld from any distributions under the Plan.

### ARTICLE III: CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

All Claims and Equity Interests are classified in the classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Equity Interest, or any portion thereof, is classified in a particular class only to the extent that any portion of such Claim or Equity Interest qualifies within the description of that class and is classified in other classes to the extent that any portion of such Claim or Equity Interest qualifies within the description of such other classes. A Claim or Equity Interest also is classified in a particular class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Equity Interest in that class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims against and Equity Interests in the Debtor pursuant to the Plan is as follows:

| Class | Claims and Equity Interests | Status | Voting Rights |
|---|---|---|---|
| Unclassified | Administrative Claims, Claims for | N/A | N/A |

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

| | Professional Fees and Expenses and the Subchapter V Trustee Claim | (described below) | |
|---|---|---|---|
| Class 1 | T Bank's Secured Claim | Impaired | Entitled to Vote |
| Class 2.1 | Priority Claims (Wages) | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2.2 | Priority Claims (Taxes) | Impaired | Entitled to Vote |
| Class 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Equity Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

## ARTICLE IV:  TREATMENT OF CLAIMS AND INTERESTS

Each Holder of an Allowed Claim or Equity Interest shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Equity Interest, except to the extent that different treatment is agreed to by the Reorganized Debtor and the Holder of an Allowed Claim or Equity Interest.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including, for the avoidance of doubt, any Claim for Professional Fees and Expenses and the Subchapter V Trustee Claim, have not been classified and thus are excluded from the classes set forth below.  Each Holder of an Administrative Claim, including, for the avoidance of doubt, any Claim for Professional Fees and Expenses and the Subchapter V Trustee Claim, shall be paid in full, unless payment terms are subject to a separate order of the Court:  (a) on the later of the Effective Date or the date on which each such Claim becomes an Allowed Claim; or (b) in accordance with such terms as may be agreed upon by the Debtor and the applicable Claimant.

The classifications set forth below are based on the Debtor's understanding of the Claims asserted against the Debtor as of the date hereof.  The Debtor reserves the right to add additional classes upon further review of its records or in connection with any proofs of claim properly filed before the Bar Date, including, but not limited to, potential classes of Other Secured Claims or

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

Priority Claims.

Please note further that certain classes below provide for allowance of the Claims in such class (or a subset of the Claims in such class) as of the Effective Date, while other classes do not. Any such Claims not expressly Allowed pursuant to the terms of this Plan shall be subject to the ordinary process for Allowance of Claims set forth in this Plan or under the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or other applicable law.

Unless expressly set forth elsewhere in this Plan, the Debtor shall be allowed to make payments, without any penalty or premium of any kind whatsoever, toward any Allowed Claims earlier than required by the treatment terms set forth below.

Unless otherwise indicated, the Holder of an Allowed Claim or Equity Interest shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter:

4.1. **Class 1 – T Bank's Secured Claim.**

    a. *Claims*: Class 1 consists of T Bank's Secured Claim.

    b. *Allowance*: T Bank's Secured Claim shall be Allowed as of the Effective Date in the amount of $603,205.00, as detailed in Section 2.6 above.

    c. *Treatment*: In full and final satisfaction of T Bank's Secured Claim, T Bank shall receive monthly payments as follows:

        i. First, beginning on October 6, 2023 (or the next Business Day), and on the sixth calendar day (or the next Business Day) of each month thereafter (up to and including the month of June 2025), in the amount of $7,000.00; and

        ii. Thereafter, beginning on the sixth calendar day (or the next Business Day) of the month of July 2025, and on the sixth calendar day (or the next Business Day) of each month thereafter (up to and including the month of December 2030, in the amount of $7,500.00, with a balloon payment for the remaining principal amount, plus all accrued and unpaid interest, of T Bank's Secured Claim to be made with the due in December 2030. Any Assets that secure T Bank's Secured Claim as of the Confirmation Date

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

shall continue to secure T Bank's Secured Claim after the Confirmation Date.

    d. *Voting*: Class 1 is Impaired under the Plan. Holders of Claims in Class 1 are entitled to vote to accept or reject the Plan.

4.2. **Class 2.1 – Priority Claims (Wages).**

    a. *Claims*: Class 2.1 consists of all Priority Claims (relating to unpaid wages).

    b. *Allowance*: The following Priority Claims in this Class shall be Allowed as of the Effective Date as follows:

| | |
|---|---|
| Cristina Bozas | $15,150.00 (507(a)(4) priority) |
| Jose Gonzalez | $10,000.00 (507(a)(4) priority) |

    c. *Treatment*: In full and final satisfaction of each Allowed Priority Claim in this Class, each Holder of an Allowed Priority Claim shall be paid in full on October 6, 2023.

    d. *Voting*: Class 2.1 is not Impaired under the Plan. Holders of Allowed Claims in Class 2.1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

4.3. **Class 2.2 – Priority Claims (Tax).**

    a. *Claims*: Class 2.2 consists of all Priority Claims (relating to unpaid taxes).

    b. *Allowance*: The following Priority Claims in this Class shall be Allowed as of the Effective Date as follows:

    c. *Treatment*: In full and final satisfaction of each Allowed Priority Claim in this Class, each Holder of an Allowed Priority Claim shall receive three payments, each such payment being equal to one-third of the amount of such Allowed Priority Claim, on the following payment dates: January 8, 2024; January 8, 2025; and January 8, 2026.

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939   FAX (503) 226-0259

d.  *Voting*:  Class 2.2 is Impaired under the Plan.  Holders of Claims in Class 2.2 are entitled to vote to accept or reject the Plan.

4.4.  **Class 3 – General Unsecured Claims.**

a.  *Claims*:  Class 3 consists of all General Unsecured Claims, including T Bank's Deficiency Claim and SBA's Deficiency Claim.

b.  *Allowance*:  The following General Unsecured Claims in this Class shall be Allowed as of the Effective Date as follows:

| T Bank's Deficiency Claim* | $475,223.16 |
| SBA's Deficiency Claim | $161,918.00 |
| Bank of America | $17,822.42 |
| U.S. Bank N.A. | $14,084.04 |
| ERC Specialists, LLC | $19,358.07 |
| 401(k) Past-Due Contributions | $21,847.00 |
| Cristina Bozas | $850.00 |
| Sellers' Claim** | To be determined |

*T Bank's Deficiency Claim may change as a result of either a ruling from this Court on the Allowed amount of T Bank's Secured Claim or an agreement between the Debtor and T Bank as to such Allowed amount.

**Sellers' Claim is a General Unsecured Claim which is currently disputed by the Debtor and will be determined through the claims allowance process and will receive distributions in accordance with the ultimately Allowed amount of Sellers' Claim.

c.  *Treatment*:  In full and final satisfaction of each Allowed General Unsecured Claim in this Class, each Holder of an Allowed General Unsecured Claim shall receive payments on the following dates, each such payment being a Pro Rata share of the Debtor's Projected Disposable Income for the time period

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

set forth below and in the amount set forth below (and as represented on the Plan Period Projections).

  i.  On or about January 8, 2025, a Pro Rata share of the Debtor's Projected Disposable Income for the period of January 1, 2024 through December 31, 2024, which Projected Disposable Income is $77,603.00.

  ii.  On or about January 8, 2026, a Pro Rata share of the Debtor's Projected Disposable Income for the period of January 1, 2025 through December 31, 2025, which Projected Disposable Income is $30,022.00.

  iii.  On or about January 8, 2027, a Pro Rata share of the Debtor's Projected Disposable Income for the period of January 1, 2026 through December 31, 2026, which Projected Disposable Income is $6,600.00.

  iv.  Notwithstanding the foregoing or anything herein to the contrary, payments to the Holders of Allowed General Unsecured Claims in this Class shall cease upon the earlier of: (A) the date on which all such Allowed General Unsecured Claims have been paid in full and (B) the date on which the payment provided for in clause (iii) occurs. At the earlier of (A) and (B), the Debtor shall be discharged from any further liability relating to such Allowed General Unsecured Claims as further described in section 9.1 of this Plan and shall not be liable for any further payments thereon.

d.  *Voting*: Class 3 is Impaired under the Plan. Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.5.  **Class 4 – Equity Interests.**

a.  *Equity Interests*: Class 4 consists of the Equity Interests held by the Saturno Equity Holders.

b.  *Treatment*: The Saturno Equity Holders shall retain their full Equity Interests in Saturno. There shall be no distributions with respect to such Equity

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

Interests until the Debtor has satisfied its obligations set forth in Class 3; *provided, however*, that the foregoing shall not be construed to prohibit payment of reasonable compensation to any employees or contractors, including any insiders, for work performed for the Reorganized Debtor, in substantially the manner set forth in the Plan Period Projections.

    c. *Voting*: Class 4 is not Impaired under the Plan. Holders of Equity Interests in Class 4 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

## ARTICLE V:  INTERESTS AND RIGHTS TO BE RETAINED

5.1. <u>Preservation of All Causes of Action</u>.  Except as otherwise provided in the Plan, or in any contract instrument, release, or agreement entered into in connection with the Plan, in accordance with section 1123(b), the Debtor and/or its Estate retain and preserve, and shall be vested with, retain, and may enforce and prosecute, any claims or causes of action that the Debtor and/or its Estate may have against any person or entity that constitute Causes of Action. The Reorganized Debtor shall have standing as a representative of its Estate for the purposes of investigating, pursuing, prosecuting, settling, collecting, liquidating, and/or recovering any assets, claims, or causes of action that constitute Causes of Action.

5.2. <u>Assumption of Portland Lease</u>.  Upon the Effective Date, the Debtor is authorized to assume and continue performance under the Portland Lease in substantially the same manner as before the Chapter 11 Case. The Portland Lease is listed on <u>Exhibit D</u> as an unexpired lease that the Debtor seeks to assume by confirming this Plan, and the "cure" amount is listed as $0.00.

## ARTICLE VI:  IMPLEMENTATION OF THE PLAN, ETC.

6.1. <u>Reorganized Debtor and Corporate Existence</u>.  The Reorganized Debtor shall be a continuation of the Debtor entity and shall continue to exist after the Effective Date as an Oregon limited liability company, pursuant to applicable law, except to the extent that the rights and obligations of the Reorganized Debtor are modified pursuant to this Plan.

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

6.2.   <u>Vesting of Assets in the Reorganized Debtor</u>.  Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all Assets in the Debtor's Estate, shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances.  On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, or dispose of Assets without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

6.3.   <u>Financing of the Plan Obligations</u>.  The payments required under the Plan shall be made primarily from the following sources:  (a) the proceeds generated from the operation of the Debtor's business; (b) the proceeds of any Causes of Action and Claims which the Debtor and/or its Estate have brought and/or may elect to bring, including, without limitation, any proceeds of such Causes of Action; and (c) the proceeds of any sale transaction to be entered into by the Debtor, including any sale of an Asset in accordance with section 6.2 hereof.  The proceeds of any such sale shall be distributed first to satisfy T Bank's Secured Claim (if the Assets sold are subject to T Bank's Lien) or to the Holder of any other valid Lien on such Assets.  Any remaining proceeds of such sale shall be held by the Debtor and used to satisfy its obligations in accordance with this Plan (provided, however, that if such sale proceeds are sufficient to satisfy all of the Debtor's payment obligations under this Plan, then the Debtor shall be entitled to keep such excess proceeds free and clear of any Claims which are governed by this Plan).

6.4.   <u>Option to Sell One or More Assets Free and Clear Under Section 363(f)</u>.   Under the Plan, the Debtor shall retain possession and ownership of the Assets, and the Debtor shall have the authority to sell any Asset without further order of this Court after the Effective Date, including outside the ordinary course of business.  If the Debtor determines in its business judgment to sell to a third party an Asset that is subject to a Lien after Effective Date, the Debtor shall first provide written notice describing the terms of the sale to the Holder(s) of any Lien on that Asset if the amount of the net proceeds from such sale are less than the remaining amount of the Allowed Secured Claim of the Holder of the Lien(s) at the time of the sale.  If,

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939   FAX (503) 226-0259

within fifteen (15) business days of such notice, the Holder(s) of any Lien(s) on the Asset being sold fail to submit to the Debtor an offer in writing to purchase the Asset on terms that exceed the original offer to the Debtor, the Debtor shall be entitled to complete the sale of the Asset to the third-party purchaser and such sale shall be free and clear of all Liens in accordance with section 363(f) of the Bankruptcy Code. The Debtor shall also have the authority without further order of this Court after the Effective Date to surrender possession of any Asset(s) to the Holder of a Lien on such Asset(s). If, after the sale or surrender of any Asset in accordance with his article, the Debtor no longer hold any Assets subject to any Lien of such Holder, any remaining Allowed Claim of such holder that is not satisfied by the net sale proceeds or the proceeds following the surrender shall be classified as an Allowed Unsecured Claim in Class 4. Notwithstanding the foregoing, the Debtor shall not be required to provide notice or seek any approval from the Holder(s) of any Lien(s) with respect to a sale of an Asset (or multiple sales of Assets, if such sales should reasonably be considered together) with fair market value of less than $5,000 or such other sales that occur in the ordinary course of the operation of the Debtor's business.

6.5. <u>Manner of Distribution</u>. Any distributions under the Plan may be made either in Cash, by check drawn on a domestic bank, ACH, or by wire transfer (or by any manner agreed to between the Debtor and the Holder of an Allowed Claim) and shall be made in United States dollars. Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan (each such payment shall be rounded up to the nearest cent).

6.6. <u>De Minimis Distributions</u>. "De Minimis Distributions" shall refer to any individual distribution of less than fifty dollars ($50.00). All De Minimis Distributions will be held by the Debtor for the benefit of the Holders of Allowed Claims entitled to De Minimis Distributions. When the aggregate amount of De Minimis Distributions exceeds $50.00, the Debtor shall distribute such De Minimis Distributions to such Holder of the Allowed Claim. If, at the time that the final distribution under the Plan is to be made, the De Minimis Distributions

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

total less than $50.00, such funds shall be distributed to such Holder of the Allowed Claim.

6.7. <u>Delivery of Distributions</u>. Except as otherwise provided in the Plan, or as may otherwise be agreed between the Debtor and the Holder of an Allowed Claim, distributions to Holders of Allowed Claims shall be made by the Debtor: (i) at the addresses set forth on the proofs of claim filed by such Holders (or at the last known addresses of such Holder if no motion requesting payment or proof of claim is filed or the Debtor has been notified in writing of a change of address); (ii) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related proof of claim; or (iii) at the addresses reflected in the schedules filed by the Debtor if no proof of claim has been filed and the Debtor has not received a written notice of a change of address.

6.8. <u>Undeliverable Distributions</u>. If payment or distribution to any Holder of an Allowed Claim under the Plan is returned for lack of a current address for the Holder or otherwise, the Debtor shall file with the Court the name, if known, and last known address of the Holder and the reason for its inability to make payment. If, after the passage of 90 days, the payment or distribution still cannot be made, the payment or distribution and any further payment or distribution to the Holder shall be distributed to the other Holders in the appropriate class or classes, and the Allowed Claim shall be deemed satisfied to the same extent as if payment or distribution had been made to the Holder of the Allowed Claim.

6.9. <u>Time Bar to Cash Payments</u>. Checks issued by the Debtor in respect of distributions to Holders of Allowed Claims pursuant to this Plan will be null and void if not cashed within 120 days of the date of their issuance. Requests for reissuance of any check shall be made to the Debtor by the Holder of the Allowed Claim with respect to which the check originally was issued. Any Claim in respect of such a voided check must be made on or before six (6) months after the date of issuance of the check. After that date, all Claims in respect of void checks will be discharged and forever barred and the Cash, including interest earned thereon, if any, shall be treated as an additional recovery of proceeds for distribution as of the date of expiration of said six (6) month period and thereafter shall be held and distributed in

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939 FAX (503) 226-0259

accordance with the terms of the Plan.

6.10.  <u>Plan Defaults and Remedies</u>.  In the event any party claims that the Debtor is alleged to be in default of any obligation under the terms of the Plan, including any claim that the Debtor failed to make any payment required by the terms of the Plan, such party shall provide the Debtor with written notice setting forth, in specific terms, the alleged default.  The Debtor shall have fifteen (15) Business Days to respond to or cure the default.  To the extent the default relates to the failure to make a payment under the Plan to a Holder of an Allowed Secured Claim, the Debtor shall have the right to cure the default within the fifteen (15) business days response deadline by surrendering the Asset(s) subject to a Lien of such Holder or by selling such Asset(s) in accordance with Section 6.4 hereof.  In the event that the Debtor fails to cure the default within the 15-business day period or the Debtor disputes the alleged default, the party claiming the default shall be free to seek relief from the Court to determine whether such default exists and to exercise its rights and remedies against the Debtor under the Plan.  No default shall be deemed to exist under the Plan until such time as the written notice has been provided and the Debtor has failed to respond or cure the default as provided for by the terms of this provision.

6.11.  <u>Setoffs and Recoupments</u>.  The Debtor may, pursuant to sections 502(h), 553, and 558 of the Bankruptcy Code, or applicable nonbankruptcy law, but shall not be required, offset against or recoup from any Claim on which payments are to be made pursuant to the Plan, any claims or Causes of Action of any nature whatsoever that the Debtor may have against the Holder of such Claim; *provided, however*, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtor and/or its Estate of any right of offset or recoupment that the Debtor and/or its Estate may have against the Holder of such Claim, nor of any other claim or Cause of Action.

6.12.  <u>Distributions in Satisfaction; Allocation</u>.  Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in/relating to, Liens on, obligations of, and interests in the Debtor

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

and/or its Estate (and/or the Assets of the Debtor and/or its Estate), whether known or unknown, arising or existing prior to the Effective Date.

6.13.  <u>Cancellation of Notes and Instruments</u>.  As of the Effective Date, except to the extent otherwise provided herein, all notes, loan agreements, documents evidencing funded debt of any kind, and securities evidencing Claims and interests and the rights thereunder of the Holders thereof shall, with respect to the Debtor, be canceled and deemed null and void and of no further force and effect, and the Holders thereof shall have no rights against the Debtor and/or its Estate, and such instruments shall evidence no such rights, except the right to receive the distributions provided for in the Plan.

6.14.  <u>No Interest on Claims</u>.  Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtor and a Holder of a Claim and approved by an order of the Court, postpetition interest shall not accrue or be paid on any Claim, no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  In addition, and without limiting the foregoing, interest shall not accrue on or be paid on any claim which is not an Allowed Claim (a "<u>Disputed Claim</u>") in respect of the period from the Confirmation Date to the date the first distribution is made when and if such Disputed Claim becomes an Allowed Claim.  No payments shall be made to the holder of a Disputed Claim until such time as the Disputed Claim becomes an Allowed Claim at which time the Debtor shall begin to make payments to the Holder of the Allowed Claim from the date the Disputed Claim is deemed an Allowed Claim in accordance with the terms of the Plan (provided that such Holder of an Allowed Claim which was previously a Disputed Claim shall be entitled to "catch up" payments at the next appropriate payment date set forth in this Plan so that such Holder, after such payment date, has received the same treatment as other Holders of Allowed Claims in such class).

6.15.  <u>Cram Down</u>.  In the event that any class allowed to vote rejects the Plan, the Debtor shall move the Court to confirm the Plan pursuant to section 1191(b) of the Bankruptcy Code.  All Claims of creditors and the rights of all Holders of equity interests in the Debtor shall

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

be satisfied solely in accordance with the Plan.

6.16. <u>Refinancing and Settlement of Allowed Claims</u>. The Debtor may enter into refinancing transactions after the Effective Date in an effort to satisfy some or all of the Claims against the Debtor, *provided* that the refinancing provides a net financial benefit to the Debtor and helps foster performance under the Plan. Additionally, the Debtor may enter into settlement agreements with one or more of the Holders of Claims against the Debtor, *provided again* that the settlement provides a net financial benefit to the Debtor and helps foster performance under the Plan. The Debtor shall be authorized to enter into the foregoing arrangements after the Effective Date without further order of the Court.

6.17. <u>The Debtor Shall Directly Make All Distributions Required Under the Plan</u>. In the absence of a subsequent order of the Court to the contrary, all payments provided for under the Plan and made hereunder shall be made by the Debtor directly. In the event that the Court later orders the Debtor to make distributions through an intermediary, the intermediary's compensation (if any) for effecting such distributions shall be determined by further order of the Court after an opportunity for notice and hearing to the Debtor and all other parties in interest.

## ARTICLE VII: CLAIMS AND INTERESTS

7.1. <u>Prepetition Claims and Amendments</u>. Each Claim as to which a proof of claim is required to be filed on or before the Bar Date and as to which a proof of claim was not filed on or before the Bar Date shall not under any circumstances become an Allowed Claim and shall be disallowed and forever barred as of the Effective Date by operation of Bankruptcy Ruled 3003(c)(2). In no event shall the Allowed Amount of any Claim against the Debtor exceeds the amount set forth in a proof of claim filed on or before the Bar Date unless the claimant in its proof of claim expressly reserved the right to amend such proof of claim in which case any such amended proof of claim must be filed by no later than the Confirmation Date. No order allowing or disallowing a Claim may be reconsidered, pursuant to section 502(j) of the Bankruptcy Code or otherwise, so as to increase the Allowed Amount thereof after entry of the Confirmation Order.

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

7.2.     <u>Objections to Claims and Interests</u>.  Any and all claims and interests, other than Postpetition Claims, which have not been scheduled by the Debtor as contingent, unliquidated, or disputed, or as to which a valid proof of claim or interest has been filed on or before the Bar Date, shall be Allowed in full, unless an objection to such Claim or interest is filed on or before the Claims Objection Date.  Claims that have been objected to and not allowed shall have no right to vote with respect to the acceptance or rejection of this Plan, except as otherwise ordered by the Court.  Except for Claims relating to Professional Fees and Expenses, Administrative Claims (which are subject to the Postpetition Claims Bar Date), and Claims expressly allowed pursuant to this Plan, all Claims shall be Allowed on the day after the Claims Objection Date if no timely filed objection is pending (unless, for the avoidance of doubt, such Claims have been scheduled by the Debtor as contingent, unliquidated, or disputed, and no proof of claim was filed, in which case such Claims shall be disallowed as set forth above), in which case such Claim shall be Allowed (if at all) in an amount ultimately determined by the Court.

7.3.     <u>Bar Date for Postpetition Claims</u>.  Any Claim entitled to priority under section 507(a)(2) of the Bankruptcy Code arising before the Confirmation Date and still outstanding 60 days thereafter shall be forever barred unless it is the subject of a motion or proof of claim filed with the Court on or before the Postpetition Claims Bar Date.  Any Claim that is the subject of such motion or proof of claim shall be allowed in full unless an objection thereto is filed within 30 days after the Postpetition Claims Bar Date or such other date as is provided by order upon motion of the Debtor.  Notwithstanding the foregoing or anything else in this Plan, any application for compensation relating to a Claim for Professional Fees and Expenses or the Subchapter V Trustee Claim shall be deemed timely:  (a) if such Claim arises before the Effective Date, within one year of the Effective Date; or (b) if such Claim arises after the Effective Date, by no later than sixty (60) days after the final distribution required in this Plan is effectuated.

## ARTICLE VIII:  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1.     <u>Assumption/Rejection of Certain Executory Contracts and Unexpired Leases</u>.

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

Under the Plan, unless an executory contract or unexpired lease is specifically assumed under the Schedule of Assumed Executory Contracts and Unexpired Leases, is the subject of a motion to assume the contract or lease that is pending as of the Effective Date, is an ordinary course agreement or arrangement with a customer, client, or vendor of the Business, or is otherwise dealt with by an order of the Court entered on or prior to the Effective Date, any and all executory contracts and unexpired leases of the Debtor shall be deemed rejected as of the Effective Date. The non-debtor party to any such rejected contract or lease shall be required to assert a Claim for damages from such rejection in accordance with section 8.4 hereof.

8.2.    Cures of Defaults.    The Debtor or the Reorganized Debtor, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter. Unless otherwise agreed upon in writing by the parties to the applicable executory contract or unexpired lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtor or the Reorganized Debtor to a counterparty must be filed with the Court on or prior to the deadline for filing an objection to this Plan. Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtor or any other party in interest or any further notice to or action, order, or approval of the Court.

8.3.    Bar Date for Rejection Damages Claims.    Any Claim for damages arising from the rejection or deemed rejection of an executory contract or unexpired lease must be filed on or before 45 days after the rejection date, or by such other date as may be specified by order of the Court and, if not so filed, will be deemed disallowed, discharged, and forever barred from receiving any distribution under this Plan. All Allowed Claims arising from the rejection of executory contracts and unexpired leases shall be classified as Allowed Unsecured Claims under Class 4 of the Plan.

8.4.    Full Release and Satisfaction.    Assumption of any executory contract or unexpired lease pursuant to the Plan or otherwise and full payment of any applicable Cure shall result in the

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of assumption.

**ARTICLE IX: EFFECT OF CONFIRMATION, DISCHARGE, AND INJUNCTION**

9.1. <u>Discharge</u>. If the Plan is confirmed pursuant to section 1191(a) of the Bankruptcy Code, then on the Effective Date, without any further order from this Court, the Debtor will be discharged from any Claims, Causes of Action, and debts and liabilities of any nature whatsoever, whether known or unknown, that arose prior to the Effective Date, to the maximum extent permitted by section 1141(d) of the Bankruptcy Code. If the Plan is confirmed pursuant to section 1191(b) of the Bankruptcy Code, then upon the expiration of the Plan Period with the Debtor having satisfied all of its obligations under this Plan, and without any further order from this Court, the Debtor will be discharged from any Claims, Causes of Action, and debts and liabilities of any nature whatsoever, whether known or unknown, that arose prior to the Effective Date, to the maximum extent permitted by sections 1141(d) and 1192 of the Bankruptcy Code. For the avoidance of doubt, the discharge set forth in this section 9.1 shall not discharge or affect any Claims relating to Professional Fees and Expenses and the Subchapter V Trustee Claim or, if applicable, any Claims of the kind specified in section 523(a) of the Bankruptcy Code.

9.2. <u>Injunction</u>. Except as otherwise expressly provided in this Plan, the documents executed pursuant to the Plan, or the Confirmation Order, on or after the Effective Date, all persons and entities who have held, currently hold, or may hold Claims against or interests in the Debtor, the Assets, or the Debtor's Estate that arose prior to the Confirmation Date (including, but not limited to, states and other governmental units, and any state official, employee, or other entity acting in an individual or official capacity on behalf of any state or other governmental units) are enjoined from, on account of such Claims or interests and only to the extent consistent with 11 USC § 524(e): (i) commencing or continuing in any manner, any action or other proceeding against the Debtor, the Reorganized Debtor, or any Assets of the Debtor or

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939 FAX (503) 226-0259

Reorganized Debtor; (ii) enforcing, attaching, executing, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor, the Reorganized Debtor, or any Assets of the Debtor or Reorganized Debtor; (iii) creating, perfecting, or enforcing any Lien of any kind against the Debtor, the Reorganized Debtor, or any Assets of the Debtor or Reorganized Debtor; and (iv) asserting or effecting any setoff, right of subrogation, or recoupment of any kind against obligations due to the Debtor, the Reorganized Debtor, or any Assets of the Debtor or Reorganized Debtor. Any person or entity injured by any willful violation of this injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in this Article IX shall prohibit the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan or enjoin or prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of the Debtor under this Plan.

9.3.    <u>Lifting of Automatic Stay and All Other Temporary Injunctions</u>.    Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in this Chapter 11 Case by order of the Court, whether under sections 105 or 362 of the Bankruptcy Code, this Plan, or otherwise, shall remain in full force and effect until the Effective Date, at which point the terms of this Plan and the Confirmation Order shall then control.

9.4.    <u>Intentionally Omitted</u>.

9.5.    <u>Termination of Cash Collateral Order</u>.  On the Effective Date, the Cash Collateral Order (or any extension, supplement, or modification thereof) shall be of no further force and effect, and the Debtor shall be authorized to use Cash Collateral (as defined in the Cash Collateral Order) without, among other restrictions or conditions, any further order from this Court or any need to provide adequate protection (as such term is defined in the Bankruptcy Code) to T Bank, the SBA, or to any other party.

## ARTICLE X:  RETENTION OF JURISDICTION

To the maximum extent permitted by 28 U.S.C. § 1334 and the Bankruptcy Code, the

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

Court shall retain jurisdiction with respect to the following matters:

(a)     To adjudicate all controversies concerning the classification, allowance, or determination of any Claim or interest, including, without limitation, any Administrative Claim;

(b)     To hear and determine all Claims arising from rejection of any executory contract or unexpired lease and to consummate the rejection and termination thereof;

(c)     To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

(d)     To adjudicate all Claims to, or ownership of any Assets of, the Debtor or in any proceeds thereof arising prior to and after the Effective Date;

(e)     To adjudicate all Claims and controversies arising out of any purchases, sales or contracts made or undertaken prior to the Effective Date;

(f)     To make such orders as are necessary and appropriate to construe or effectuate the provisions of the Plan;

(g)     To hear and determine any and all Causes of Action;

(h)     To hear and determine any and all applications of professional persons for allowance of compensation and/or reimbursement of Professional Fees and Expenses, the Subchapter V Trustee Claim, and all other Administrative Claims which may be pending on, or made after, the Confirmation Date;

(i)     To adjudicate any and all motions, adversary proceedings and litigated matters pending on the Confirmation Date or filed thereafter within any applicable statutory period;

(j)     To adjudicate any and all controversies and disputes arising under, or in connection with, the Plan or any order or document entered or approved by the Court in connection with the Debtor, the Chapter 11 Case, or any controversy or dispute which may affect the Debtor's ability to implement or fund the Plan; and

(k)     To hear and determine such other matters as the Court in its reasonable discretion shall deem appropriate.

## ARTICLE XI:  GENERAL PROVISIONS

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

11.1.  <u>Rules of Construction</u>.  The article and section headings used in this Plan are inserted for convenience and reference only and neither constitute a part of, nor in any manner affect, the terms, provisions, or interpretation of this Plan.  Wherever used, the singular shall include the plural, and the plural shall include the singular.  Pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender.

11.2.  <u>Exhibits</u>.  All exhibits and documents attached hereto or included as part of any plan supplement are incorporated into and are a part of this Plan as if set forth in full in the Plan. To the extent that any exhibit or other document is inconsistent with the terms of the Plan, unless otherwise ordered by the Court, the non-exhibit or non-document portion of the Plan shall control.

11.3.  <u>Severability</u>.  Should any term or provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

11.4.  <u>Controlling Documents</u>.  In the event and to the extent that any provision of this Plan (or any exhibit annexed hereto) is inconsistent with the provisions of any other agreement, document, or instrument required or contemplated to be executed pursuant to this Plan, the provisions of this Plan shall control and take precedence.  In the event and to the extent that any provision of this Plan (or any exhibit annexed hereto) is inconsistent with the provisions the Confirmation Order, the provisions of the Confirmation Order shall control and take precedence.

11.5.  <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code, the Bankruptcy Rules, or other controlling federal statutes or laws, are applicable, the rights and obligations arising under this Plan and any documents, instruments, or agreements executed in connection with this Plan (except as otherwise indicated in such documents, instruments, and agreements) shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Oregon (without giving effect to the conflicts of law principles thereof).

11.6.  <u>Binding Effect</u>.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

Holder of a Claim against, or interest in, the Debtor and its respective successors and assigns, whether or not the Claim or interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan. The rights, benefits, and obligations of any entity named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity (including, but not limited to, any trustee appointed for the Debtor under chapters 7 or 11 of the Bankruptcy Code).

11.7. <u>The Assets</u>. On and after the Effective Date, and subject to compliance with the terms of this Plan, the Debtor may, without further approval of or order from the Court, use, sell, assign, transfer, abandon, settle, or otherwise dispose of at a public or private sale any of the Assets for the purpose of liquidating and converting such Assets to Cash, making distributions, and fully consummating the Plan.

11.8. <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, the assignment or surrender of any leases or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the execution, delivery and recording of any deed relating to any of the Assets, and any other deeds, bills of sale or assignment executed in connection with any disposition of Assets under, in furtherance of, or in connection with the Plan shall not be subject to any tax to the fullest extent allowed under section 1146 of the Bankruptcy Code.

11.9. <u>Further Assurances and Cooperation</u>. The Debtor, and each person required or contemplated by this Plan to execute and deliver a written instrument, agreement or document, shall execute and deliver such instrument, agreement or document in form and substance satisfactory to the Debtor, and shall perform all other and further reasonable acts requested by the Debtor, in order to permit the purposes and intents of this Plan to be consummated.

11.10. <u>Closing of Chapter 11 Case</u>. The Chapter 11 Case shall be deemed closed at such time as the order closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code has been entered by the Court and becomes a Final Order.

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939 FAX (503) 226-0259

11.11.  Management Post-Confirmation.  Upon confirmation of the Plan and occurrence of the Effective Date, the Saturno Equity Holders and other principals of the Debtor shall continue to operate and manage the businesses and Assets of the Debtor on a day-to-day basis and in a manner substantially similar to prepetition operations.

## ARTICLE XII:  MODIFICATION OF THE PLAN

The Debtor may modify this Plan to the maximum extent permitted by the terms and conditions of section 1193 of the Bankruptcy Code.  If the Plan has been confirmed, any Holder of a Claim or interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Court, such Holder changes the previous acceptance or rejection of the Holder.

## ARTICLE XIII:  CONDITIONS PRECEDENT TO EFFECTIVE DATE

The Plan shall not become effective, and the Effective Date shall not occur, unless and until the Confirmation Order shall have been entered by the Court and shall have become a Final Order.  The Debtor shall file a "Notice of Effective Date" (or similar document) on the docket upon the occurrence of the Effective Date.

Respectfully submitted:

Dated:  August 29, 2023

_Rodolfo Bozas_
_____
Rodolfo (Rudy) Bozas
Managing Partner of Saturno Design, LLC

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

# EXHIBIT A

## PLAN PERIOD PROJECTIONS

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939   FAX (503) 226-0259

| | 2023 | | | | | | | 2024 |
|---|---|---|---|---|---|---|---|---|
| | Sept | Oct | Nov | Dec | Jan. | Feb | Mar | April |
| **Beginning Cash Balance** | $46,632 | $26,693 | $29,100 | $24,657 | $25,214 | $70,587 | $85,960 | $105,334 |
| **Income Estimate** | 82,989 | 85,000 | 75,000 | 65,000 | 110,000 | 80,000 | 84,000 | 74,000 |
| **PERSONNEL EXPENSES** | | | | | | | | |
| **Salaries Principal (Gross) / (as 1099)** | | | | | | | | |
| **Salary Dev (Gross)** | 14,604 | 14,604 | 14,604 | 14,604 | 14,604 | 14,604 | 14,604 | 14,604 |
| **Salaries PM (Gross)** | 8,668 | 8,668 | 8,668 | 8,668 | 8,668 | 8,668 | 8,668 | 8,668 |
| **Contractors -** | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 |
| **Payroll Taxes (ER) Federal/State** | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 |
| **401(k), Health, Dental, Payroll, Life Ins** | 24,574 | 4,089 | 4,089 | 4,089 | 4,089 | 4,089 | 4,089 | 4,089 |
| **Total Personnel Expenses** | 64,846 | 44,361 | 44,361 | 44,361 | 44,361 | 44,361 | 44,361 | 44,361 |
| **OPERATING EXPENSES** | | | | | | | | |
| **Computer Expenses** | | | | | | | | |
| **Hosting-Datapipe & MSF Azure** | 6,245 | 6,245 | 6,245 | 6,245 | 6,245 | 6,245 | 6,245 | 6,245 |
| **Rent, Utilities, Telephone** | 3,026 | 3,026 | 3,026 | 3,026 | 3,177 | 3,177 | 3,177 | 3,177 |
| **Software /Internet** | 1,761 | 1,761 | 1,761 | 1,761 | 1,761 | 1,761 | 1,761 | 1,761 |
| **Marketing, Promotion, Licenses, Etc.** | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 |
| **Bank Charges** | 150 | 150 | 150 | 150 | 158 | 158 | 158 | 158 |
| **Insurance - Liability/Umbrella/WC** | 500 | 500 | 500 | 500 | 525 | 525 | 525 | 525 |
| **T Bank Payments** | | | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| **Other Plan Payments** | | 25,150 | | | | | | |
| **Miscellaneous Expenses (Reserve)** | | - | - | - | - | - | - | - |
| **Professional Fee Claims (Legal/Accounting)** | 25,000 | | 15,000 | | | | | |
| **Total Operating Expenses** | 38,082 | 38,232 | 35,082 | 20,082 | 20,266 | 20,266 | 20,266 | 20,266 |
| **Total Expenses** | 102,928 | 82,593 | 79,443 | 64,443 | 64,627 | 64,627 | 64,627 | 64,627 |
| **Ending Cash Balance** | $26,693 | $29,100 | $24,657 | $25,214 | $70,587 | $85,960 | $105,334 | $114,707 |

**Projected Disposable Income / GUC Payments (if > $0)**                                    (1,479)

*Employee 401(k) match done annually in September

**Actual cash balances may differ due to timing of receipts and expenses

**Disposable Income may be reduced by payment of administrative claims or other allowed claims not set in these Projections as of the date hereof

**$40,000 estimate of professional fee claims may be updated at confirmation

FG: 101652134.3

|  | | | | 2024 | | | | |
|---|---|---|---|---|---|---|---|---|
|  | **May** | **Jun** | **Jul** | **Aug** | **Sep** | **Oct** | **Nov** | **Dec** |
| **Beginning Cash Balance** | $114,707 | $134,080 | $148,342 | $146,005 | $140,267 | $105,030 | $114,292 | $113,555 |
| **Income Estimate** | 84,000 | 90,000 | 75,000 | 70,000 | 65,000 | 85,000 | 75,000 | 65,000 |
| **PERSONNEL EXPENSES** | | | | | | | | |
| **Salaries Principal (Gross) / (as 1099)** | | | | | | | | |
| **Salary Dev (Gross)** | 14,604 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 |
| **Salaries PM (Gross)** | 8,668 | 9,015 | 9,015 | 9,015 | 9,015 | 9,015 | 9,015 | 9,015 |
| **Contractors -** | 8,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 |
| **Payroll Taxes (ER) Federal/State** | 9,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 |
| **401(k), Health, Dental, Payroll, Life Ins** | 4,089 | 5,452 | 7,052 | 5,452 | 25,452 | 5,452 | 5,452 | 5,452 |
| **Total Personnel Expenses** | 44,361 | 56,467 | 58,067 | 56,467 | 76,467 | 56,467 | 56,467 | 56,467 |
| **OPERATING EXPENSES** | | | | | | | | |
| **Computer Expenses** | | | | | | | | |
| **Hosting-Datapipe & MSF Azure** | 6,245 | 5,250 | 5,250 | 5,250 | 5,250 | 5,250 | 5,250 | 5,250 |
| **Rent, Utilities, Telephone** | 3,177 | 3,177 | 3,177 | 3,177 | 3,177 | 3,177 | 3,177 | 3,177 |
| **Software /Internet** | 1,761 | 1,761 | 1,761 | 1,761 | 1,761 | 1,761 | 1,761 | 1,761 |
| **Marketing, Promotion, Licenses, Etc.** | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 |
| **Bank Charges** | 158 | 158 | 158 | 158 | 158 | 158 | 158 | 158 |
| **Insurance - Liability/Umbrella/WC** | 525 | 525 | 525 | 525 | 525 | 525 | 525 | 525 |
| **T Bank Payments** | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| **Other Plan Payments** | | | | | 4,500 | | | |
| **Miscellaneous Expenses (Reserve)** | - | - | - | - | - | - | - | - |
| **Professional Fee Claims (Legal/Accounting)** | | | | | | | | |
| **Total Operating Expenses** | 20,266 | 19,271 | 19,271 | 19,271 | 23,771 | 19,271 | 19,271 | 19,271 |
| **Total Expenses** | 64,627 | 75,738 | 77,338 | 75,738 | 100,238 | 75,738 | 75,738 | 75,738 |
| **Ending Cash Balance** | $134,080 | $148,342 | $146,005 | $140,267 | $105,030 | $114,292 | $113,555 | $102,817 |

**Projected Disposable Income / GUC Payments (if > $0)**

*Employee 401(k) match done annually in September

**Actual cash balances may differ due to timing of receipts and expenses

**Disposable Income may be reduced by payment of administrative claims or other allowed claims not set in these Projections as of the date hereof

**$40,000 estimate of professional fee claims may be updated at confirmation

| | 2025 | | | | | | | 2025 |
|---|---|---|---|---|---|---|---|---|
| | Jan. | Feb | Mar | April | May | Jun | Jul | Aug |
| Beginning Cash Balance | $25,214 | $63,863 | $72,512 | $84,161 | $85,810 | $97,459 | $112,384 | $108,209 |
| Income Estimate | 115,000 | 85,000 | 88,000 | 78,000 | 88,000 | 95,000 | 78,000 | 73,000 |
| **PERSONNEL EXPENSES** | | | | | | | | |
| Salaries Principal (Gross) / (as 1099) | | | | | | | | |
| Salary Dev (Gross) | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 |
| Salaries PM (Gross) | 9,015 | 9,015 | 9,015 | 9,015 | 9,015 | 9,375 | 9,375 | 9,375 |
| Contractors - | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 11,000 | 11,000 | 11,000 |
| Payroll Taxes (ER) Federal/State | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 |
| 401(k), Health, Dental, Payroll, Life Ins | 5,452 | 5,452 | 5,452 | 5,452 | 5,452 | 6,815 | 8,415 | 6,815 |
| Total Personnel Expenses | 56,467 | 56,467 | 56,467 | 56,467 | 56,467 | 60,190 | 61,790 | 60,190 |
| **OPERATING EXPENSES** | | | | | | | | |
| Computer Expenses | | | | | | | | |
| Hosting-Datapipe & MSF Azure | 5,513 | 5,513 | 5,513 | 5,513 | 5,513 | 5,513 | 5,513 | 5,513 |
| Rent, Utilities, Telephone | 3,336 | 3,336 | 3,336 | 3,336 | 3,336 | 3,336 | 3,336 | 3,336 |
| Software /Internet | 1,849 | 1,849 | 1,849 | 1,849 | 1,849 | 1,849 | 1,849 | 1,849 |
| Marketing, Promotion, Licenses, Etc. | 1,470 | 1,470 | 1,470 | 1,470 | 1,470 | 1,470 | 1,470 | 1,470 |
| Bank Charges | 165 | 165 | 165 | 165 | 165 | 165 | 165 | 165 |
| Insurance - Liability/Umbrella/WC | 551 | 551 | 551 | 551 | 551 | 551 | 551 | 551 |
| T Bank Payments | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,500 | 7,500 |
| Other Plan Payments | | | | | | | | |
| Miscellaneous Expenses (Reserve) | - | - | - | - | - | - | - | - |
| Professional Fee Claims (Legal/Accounting) | | | | | | | | |
| Total Operating Expenses | 19,884 | 19,884 | 19,884 | 19,884 | 19,884 | 19,884 | 20,384 | 20,384 |
| **Total Expenses** | 76,351 | 76,351 | 76,351 | 76,351 | 76,351 | 80,075 | 82,175 | 80,575 |
| Ending Cash Balance | $63,863 | $72,512 | $84,161 | $85,810 | $97,459 | $112,384 | $108,209 | $100,635 |
| Projected Disposable Income / GUC Payn | 77,603 | | | | | | | |

*Employee 401(k) match done annually in September

**Actual cash balances may differ due to timing of receipts and expenses

**Disposable Income may be reduced by payment of administrative claims or other allowed claims not set in these Projections as of the date hereof

**$40,000 estimate of professional fee claims may be updated at confirmation

|  |  | Sep | Oct | Nov | Dec | Jan. | Feb | Mar | 2026 April |
|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | | $100,635 | $63,960 | $71,385 | $68,811 | $25,214 | $63,995 | $72,776 | $81,557 |
| **Income Estimate** | | 68,000 | 88,000 | 78,000 | 67,000 | 120,000 | 90,000 | 90,000 | 80,000 |
| **PERSONNEL EXPENSES** | | | | | | | | | |
| **Salaries Principal (Gross) / (as 1099)** | | | | | | | | | |
| **Salary Dev (Gross)** | | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 |
| **Salaries PM (Gross)** | | 9,375 | 9,375 | 9,375 | 9,375 | 9,375 | 9,375 | 9,375 | 9,375 |
| **Contractors -** | | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 |
| **Payroll Taxes (ER) Federal/State** | | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 |
| **401(k), Health, Dental, Payroll, Life Ins** | | 26,415 | 6,815 | 6,815 | 6,815 | 6,815 | 6,815 | 6,815 | 6,815 |
| **Total Personnel Expenses** | | 79,790 | 60,190 | 60,190 | 60,190 | 60,190 | 60,190 | 60,190 | 60,190 |
| **OPERATING EXPENSES** | | | | | | | | | |
| **Computer Expenses** | | | | | | | | | |
| **Hosting-Datapipe & MSF Azure** | | 5,513 | 5,513 | 5,513 | 5,513 | 5,788 | 5,788 | 5,788 | 5,788 |
| **Rent, Utilities, Telephone** | | 3,336 | 3,336 | 3,336 | 3,336 | 3,503 | 3,503 | 3,503 | 3,503 |
| **Software /Internet** | | 1,849 | 1,849 | 1,849 | 1,849 | 1,942 | 1,942 | 1,942 | 1,942 |
| **Marketing, Promotion, Licenses, Etc.** | | 1,470 | 1,470 | 1,470 | 1,470 | 1,544 | 1,544 | 1,544 | 1,544 |
| **Bank Charges** | | 165 | 165 | 165 | 165 | 174 | 174 | 174 | 174 |
| **Insurance - Liability/Umbrella/WC** | | 551 | 551 | 551 | 551 | 579 | 579 | 579 | 579 |
| **T Bank Payments** | | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| **Other Plan Payments** | | 4,500 | | | | | | | |
| **Miscellaneous Expenses (Reserve)** | | - | - | - | - | - | - | - | - |
| **Professional Fee Claims (Legal/Accounting)** | | | | | | | | | |
| **Total Operating Expenses** | | 24,884 | 20,384 | 20,384 | 20,384 | 21,029 | 21,029 | 21,029 | 21,029 |
| **Total Expenses** | | 104,675 | 80,575 | 80,575 | 80,575 | 81,219 | 81,219 | 81,219 | 81,219 |
| **Ending Cash Balance** | | $63,960 | $71,385 | $68,811 | $55,236 | $63,995 | $72,776 | $81,557 | $80,339 |
| **Projected Disposable Income / GUC Payments (if > $0)** | | | | | | 30,022 | | | |

*Employee 401(k) match done annually in September

**Actual cash balances may differ due to timing of receipts and expenses

**Disposable Income may be reduced by payment of administrative claims or other allowed claims not set in these Projections as of the date hereof

**$40,000 estimate of professional fee claims may be updated at confirmation

|  | | 2026 | | | | | | |
|---|---|---|---|---|---|---|---|---|
|  | **May** | **Jun** | **Jul** | **Aug** | **Sep** | **Oct** | **Nov** | **Dec** |
| **Beginning Cash Balance** | $80,339 | $89,120 | $102,533 | $96,147 | $85,860 | $45,773 | $52,187 | $47,400 |
| **Income Estimate** | 90,000 | 105,000 | 85,800 | 80,300 | 75,000 | 97,000 | 85,800 | 75,000 |
| **PERSONNEL EXPENSES** | | | | | | | | |
| Salaries Principal (Gross) / (as 1099) | | | | | | | | |
| **Salary Dev (Gross)** | 22,000 | 22,880 | 22,880 | 22,880 | 22,880 | 22,880 | 22,880 | 22,880 |
| **Salaries PM (Gross)** | 9,375 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| **Contractors -** | 11,000 | 10,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 |
| **Payroll Taxes (ER) Federal/State** | 11,000 | 14,500 | 14,500 | 14,500 | 14,500 | 14,500 | 14,500 | 14,500 |
| **401(k), Health, Dental, Payroll, Life Ins** | 6,815 | 8,178 | 9,778 | 8,178 | 28,178 | 8,178 | 8,178 | 8,178 |
| **Total Personnel Expenses** | 60,190 | 70,558 | 71,158 | 69,558 | 89,558 | 69,558 | 69,558 | 69,558 |
| **OPERATING EXPENSES** | | | | | | | | |
| **Computer Expenses** | | | | | | | | |
| **Hosting-Datapipe & MSF Azure** | 5,788 | 5,788 | 5,788 | 5,788 | 5,788 | 5,788 | 5,788 | 5,788 |
| **Rent, Utilities, Telephone** | 3,503 | 3,503 | 3,503 | 3,503 | 3,503 | 3,503 | 3,503 | 3,503 |
| **Software /Internet** | 1,942 | 1,942 | 1,942 | 1,942 | 1,942 | 1,942 | 1,942 | 1,942 |
| **Marketing, Promotion, Licenses, Etc.** | 1,544 | 1,544 | 1,544 | 1,544 | 1,544 | 1,544 | 1,544 | 1,544 |
| **Bank Charges** | 174 | 174 | 174 | 174 | 174 | 174 | 174 | 174 |
| **Insurance - Liability/Umbrella/WC** | 579 | 579 | 579 | 579 | 579 | 579 | 579 | 579 |
| **T Bank Payments** | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| **Other Plan Payments** | | | | | 4,500 | | | |
| **Miscellaneous Expenses (Reserve)** | - | - | - | - | - | - | - | - |
| **Professional Fee Claims (Legal/Accounting)** | | | | | | | | |
| **Total Operating Expenses** | 21,029 | 21,029 | 21,029 | 21,029 | 25,529 | 21,029 | 21,029 | 21,029 |
| **Total Expenses** | **81,219** | **91,587** | **92,187** | **90,587** | **115,087** | **90,587** | **90,587** | **90,587** |
| **Ending Cash Balance** | $89,120 | $102,533 | $96,147 | $85,860 | $45,773 | $52,187 | $47,400 | $31,814 |
| **Projected Disposable Income / GUC Payments (if > $0)** | | | | | | | | 6,600 |

*Employee 401(k) match done annually in September

**Actual cash balances may differ due to timing of receipts and expenses

**Disposable Income may be reduced by payment of administrative claims or other allowed claims not set in these Projections as of the date hereof

**$40,000 estimate of professional fee claims may be updated at confirmation

# **EXHIBIT B**

## **PETITION DATE BALANCE SHEET**

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

# Saturno Design, LLC
## Balance Sheet
### As of June 30, 2023

| | Jun 30, 23 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| 1000 · US Bank Checking - 7969 | 5,268.92 |
| 1030 · Bank of America - 0351 | 27,793.70 |
| **Total Checking/Savings** | 33,062.62 |
| **Accounts Receivable** | |
| 1300 · Accounts Receivable | 147,934.02 |
| **Total Accounts Receivable** | 147,934.02 |
| **Other Current Assets** | |
| 1150 · Undeposited Funds | 1,199.00 |
| 2123 · Payroll Asset | (38,612.86) |
| **Total Other Current Assets** | (37,413.86) |
| **Total Current Assets** | 143,582.78 |
| **Fixed Assets** | |
| **1500 · Acquisition Assets** | |
| 1505 · Computer Equipment | 25,000.00 |
| 1510 · Furniture and Equipment | 184,000.00 |
| 1515 · Leasehold Improvements | 15,000.00 |
| 1520 · Other Acquisition Assets | 84,000.00 |
| 1525 · Software | 2,699,888.37 |
| 1530 · Telephone & Equipment | 15,000.00 |
| **Total 1500 · Acquisition Assets** | 3,022,888.37 |
| **1600 · Other Assets** | |
| 1605 · Furniture and Office Equipment | 4,749.00 |
| **Total 1600 · Other Assets** | 4,749.00 |
| **1700 · Accumulated Depreciation** | |
| 1705 · Accum Depr Computer Equipment | (37,320.00) |
| 1710 · Accum Depr Furniture & Equip | (285,840.00) |
| 1715 · Accum Depr Leasehold Improvemen | (12,504.00) |
| 1730 · Accum Depr Telephone Equip | (18,020.00) |
| **Total 1700 · Accumulated Depreciation** | (353,684.00) |
| **1800 · (Saturno/Lotus Purch)** | |
| 1360 · Accumulated Amortization | (1,400,870.00) |
| 1805 · Goodwill (Saturno/Lotus Purch) | 463,113.00 |
| 1810 · Closing Costs (Saturno/Lotus Pu | 91,568.83 |
| **Total 1800 · (Saturno/Lotus Purch)** | (846,188.17) |
| **Total Fixed Assets** | 1,827,765.20 |

# Saturno Design, LLC
## Balance Sheet
### As of June 30, 2023

|  | Jun 30, 23 |
|---|---|
| **Other Assets** |  |
| 1815 · Due from Greg Fredette | 248,871.69 |
| 1820 · Due from Lotus | 306,170.31 |
| 1825 · Loan due from Polvora | 22,526.17 |
| **Total Other Assets** | 577,568.17 |
| **TOTAL ASSETS** | **2,548,916.15** |
| **LIABILITIES & EQUITY** |  |
| **Liabilities** |  |
| **Current Liabilities** |  |
| **Accounts Payable** |  |
| 2000 · Accounts Payable | 82,281.07 |
| **Total Accounts Payable** | 82,281.07 |
| **Credit Cards** |  |
| American Express Business 81001 | 3,550.00 |
| **1003 · US Credit Card - 5068** |  |
| 1004 · US Credit Card - 5076 - Rudy | 3,971.51 |
| 1005 · US Credit Card - 5084 - Office | 6,269.39 |
| 1003 · US Credit Card - 5068 - Other | 14,341.17 |
| **Total 1003 · US Credit Card - 5068** | 24,582.07 |
| **1900 · CC Bank of America Corp. - 7584** |  |
| 1901 · CC BoA - Cris - 2210 | 7,062.53 |
| 1902 · CC BoA Rudy - 5056 | 27,753.81 |
| 1903 · CC BoA - Jose - 8420 | 9,710.92 |
| 1900 · CC Bank of America Corp. - 7584 - Other | (52,903.33) |
| **Total 1900 · CC Bank of America Corp. - 7584** | (8,376.07) |
| 2020 · BofA Credity Card 5056 | 2,428.23 |
| **Total Credit Cards** | 22,184.23 |
| **Other Current Liabilities** |  |
| 1830 · Debt to Meza Capital | 12,000.00 |
| 2125 · Loan due to Polvora | 10,453.25 |
| 2126 · Loan due to Rudy/Cris Bozas | 37,441.35 |
| 2130 · Lotus T Bank Loan (Saturno) | 45,797.62 |
| 2145 · A/R Due to Greg Fredette | 372,540.32 |
| **2300 · Payroll Liabilities** |  |
| 2310 · Social Security Tax | 52,635.86 |
| 2315 · Medicare Tax | 12,310.00 |
| 2320 · Federal Income Tax | 46,884.00 |
| 2325 · State Income Tax | 32,250.95 |
| 2326 · MA Taxes | 5,033.29 |
| 2340 · 401(K) Retirement Plan | 21,002.45 |
| 2350 · FUTA | 198.61 |
| 2355 · SUI/Tri-met/WBF | 11,311.48 |
| 2360 · Health Insurance | 54,789.32 |

Case 23-31455-dwh11    Doc 67    Filed 08/29/23

# Saturno Design, LLC
## Balance Sheet
### As of June 30, 2023

|  | Jun 30, 23 |
|---|---|
| 2365 · Dental Insurance | 3,335.92 |
| 2300 · Payroll Liabilities - Other | (635.42) |
| **Total 2300 · Payroll Liabilities** | 239,116.46 |
| 2406 · Dept of Treasury Installment Lo | (3,360.00) |
| 2408 · 2nd PPP SBA Loan | 166,468.95 |
| 2409 · SBA Loan | 144,883.00 |
| **Total Other Current Liabilities** | 1,025,340.95 |
| **Total Current Liabilities** | 1,129,806.25 |
| **Long Term Liabilities** | |
| 2401 · Greg Fredette (Subordinated #1) | 128,640.03 |
| 2402 · Greg Fredette (Subordinated #2) | 389,802.88 |
| 2403 · T Bank | 1,049,249.89 |
| **Total Long Term Liabilities** | 1,567,692.80 |
| **Total Liabilities** | 2,697,499.05 |
| **Equity** | |
| 2410 · Addl Paid In Capital (Lotus) | 500,000.00 |
| 2415 · Preacquisition Draws | (907,087.54) |
| 2420 · Acquisition Draws | (101,435.61) |
| 3000 · Opening Balance Equity | 50,749.09 |
| 3020 · Shareholder Equity | 5,000.00 |
| 3030 · Due To/From Shareholder | (19,051.97) |
| 3050 · Retained Earnings | 17,769.91 |
| 3150 · Additional Paid in Capital | 273,652.62 |
| Net Income | 31,820.60 |
| **Total Equity** | (148,582.90) |
| **TOTAL LIABILITIES & EQUITY** | **2,548,916.15** |

Case 23-31455-dwh11    Doc 67    Filed 08/29/23

**EXHIBIT C**

**ASSET VALUATIONS AND LIQUIDATION ANALYSIS**

**Assumptions**

Methodology and Basis

Hypothetical chapter 7 recoveries set forth in this analysis (this "Liquidation Analysis") are based on the Debtor's projected assets as of September 1, 2023 (the "Assumed Conversion Date"), which is a little less than two months after the Petition Date and the filing of the Plan (and therefore is a reasonable approximation of when a conversion to chapter 7 may occur assuming that confirmation of the Plan is denied). The Liquidation Analysis assumes that the Debtor would commence the hypothetical chapter 7 liquidation on or about the Assumed Conversion Date under the supervision of a court-appointed chapter 7 trustee. The Liquidation Analysis reflects the wind down and liquidation of substantially all of the Debtor's remaining assets and the distribution of available proceeds to Holders of Allowed Claims during the period after the Assumed Conversion Date.

**The Debtor believes that any analysis of a hypothetical liquidation is necessarily speculative and that the assumptions upon which this Liquidation Analysis relies are inherently subject to significant uncertainties and contingencies beyond the control of the Debtor or a chapter 7 trustee. Neither this Liquidation Analysis, nor the financial information on which it is based, has been examined or reviewed by independent accountants in accordance with standards promulgated by the American Institute of Certified Public Accountants. There can be no assurance that the actual results would not vary materially from the hypothetical results presented herein.**

Additional Notes

1.     Dependence on Assumptions and Forecasted Balance Sheet. The Liquidation Analysis depends on a number of estimates and assumptions. Although developed and considered by the management and the advisors of Debtor, these assumptions are inherently subject to significant economic, business, regulatory, and competitive uncertainties and contingencies beyond the control of the Debtor or its management. The Liquidation Analysis is also based on the Debtor's best judgment of how numerous issues in the liquidation process would be resolved. Accordingly, there can be no assurance that the values reflected in the Liquidation Analysis would be realized if the Debtor were, in fact, to undergo such a liquidation and actual results could vary materially and adversely from those contained herein.

3.     Chapter 7 Liquidation Process. The liquidation of the Debtor's assets is assumed to be completed over a period of several months. During the first few months, the chapter 7 trustee would seek a party willing to purchase the Business. During the next few months, the chapter 7 trustee would complete a sale of the Business, if possible, and potential other sales of the remaining furniture, fixtures, and equipment, likely through the use of a third party broker or liquidating agent. The chapter 7 trustee would also seek to collect accounts receivable outstanding and owed to the Debtor. Administration of the chapter 7 estates would wind down after distribution of proceeds from the foregoing liquidation efforts.

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939 FAX (503) 226-0259

4.   <u>Claims Estimates</u>.   The Liquidation Analysis relies upon the amounts ascribed to the claims in the Debtor's schedules.   No order or finding has been entered or made by the Bankruptcy Court estimating or otherwise fixing the amount of Claims as set forth herein, and such estimates should not be relied upon for any other purpose, including, without limitation, any determination of the value of any distribution to be made on account of an Allowed Claim under the Plan.   The estimates set forth below should not be construed as a concession or admission by Debtor that any Claim (including, for the avoidance of doubt, T Bank's Secured Claim) should be allowed in that particular amount (or any particular amount).   The actual amount of Allowed Claims could be materially different from the amounts estimated herein.

6.   <u>Assets</u>.   The Debtor's Assets consist principally of the Business (the value of which already incorporates average working capital for prior four quarters of $138,532) and a modest amount of computer equipment and furniture.   Other Assets held by Debtor are of generally inconsequential value for purposes of this Liquidation Analysis.

7.   <u>Liquidation Value Discounts</u>.   The Debtor believes that their liquidation of their Assets in a hypothetical chapter 7 liquidation would result in substantially less proceeds than the value of those Assets in Debtor's hands, which collectively allow the Debtor to operate a historically successful, award-winning Business.   Consequently, for purposes of this Liquidation Analysis, the Debtor multiplied the as-is value of the Business as set forth above in the Plan by 0.85 (to reflect a 15% forced-sale discount for the Business).   Debtor believes that these "liquidation value discounts" are reasonable.

8.   <u>Fees and Expenses Not Specifically Estimated</u>.   The Debtor notes that a chapter 7 trustee would receive distributions after liquidating the Debtor's assets, that counsel for the chapter 7 trustee would receive substantial fees, and that commissions on a sale of the Business would be approximately substantial.   However, the Debtor does not separately estimate such figures given the clear conclusion that a chapter 7 proceeding would result in no recovery for the Holders of Allowed General Unsecured Claims.

9.   <u>Unsecured Claims</u>.   Unsecured Claims for the Debtor consist of those Claims set forth in Class 3 of the Plan, which are estimated in the aggregate amount of $711,102.69.

10.   <u>Additional Costs and Expenses Not Estimated Herein</u>.   The Liquidation Analysis should not be construed as a concession or admission that no additional costs or expenses would be incurred by the Debtor's estate in a hypothetical chapter 7 liquidation.

*[Estimated Asset Values on the Following Page]*

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

**Estimated Asset Values**

| Asset Category | Explanation of Valuation | Forced Sale Value |
|---|---|---|
| The Business | Estimated value of the Business ($603,205) discounted by 15% given fire-sale liquidation context (value already incorporates average working capital for prior four quarters of $138,532). | $512,274.25 |
| Computer Equipment | Estimated eight working computers with monitors. Each computer/monitor combination estimated at a depreciated value of $400. Two servers over 6 years old, estimated at $600 each. | $4,400 |
| Furniture / Miscellaneous Office Assets | Estimated 8 operational standing desks, 8 desk chairs and two small conference room tables with four chairs each. | $2,600 |

**Distribution of Proceeds of Assets in Forced Sale Liquidation**

| | |
|---|---|
| Gross Proceeds from Liquidation: | $519,274.30 |
| (Less) T Bank's Secured Claim: | ($603,205) |
| Total Proceeds Available to Unsecured Creditors: | $0 or less than $0 |
| Projected Chapter 7 Recovery for Prepetition Unsecured Creditors: | 0.00% |
| Projected Plan Recovery for Prepetition Unsecured Creditors: | 16.06% |

*Based on Projected Disposable Income of $114,225 and estimated aggregate amount of Allowed General Unsecured Claims of $711,102.69. This percentage may decrease if additional Claims are filed prior to the Bar Date or if Allowed General Unsecured Claims are in an aggregate amount greater than set forth herein (including, but not limited to, as a result of the ultimately Allowed amount of Sellers' Claim). Nevertheless, this figure will always be greater than 0.00% regardless of the ultimately Allowed General Unsecured Claims.

EX. C (PAGE 3 OF 3) – LIQUIDATION ANALYSIS

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

Case 23-31455-dwh11   Doc 67   Filed 08/29/23

# EXHIBIT D

## SCHEDULE OF ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

| Debtor Contract Party | Other Contract Party | Cure Cost | Title & Description of Contract or Lease |
|---|---|---|---|
| Saturno Design, LLC | 506 Wilcox Building, LLC | $0.00 | The Debtor's lease of the Portland Office |

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

1

**EXHIBIT E1**

2

**CLASS 1 BALLOT**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

Case 23-31455-dwh11    Doc 67    Filed 08/29/23

1
2

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

3
4

In re:

5

Saturno Design, LLC.[1]

6

Debtor.

7

Case No. 23-31455-dwh11

**CLASS 1 BALLOT TO VOTE TO ACCEPT OR REJECT DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

8
9
10
11
12

You ("Holder") are receiving this Ballot because you are the Holder of T Bank's Secured Claim in Class 1 of the Debtor's First Amended Chapter 11 Plan of Reorganization dated July 24, 2023 (the "Plan").[2] The Plan sets forth the proposed treatment of your Claim. The Plan can be confirmed by the Bankruptcy Court for the District of Oregon (the "Court") and made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each impaired class voting on the Plan. If the requisite acceptances are not obtained, the Court may still confirm the Plan if the requirements of 11 U.S.C. § 1129 have been met.

13
14
15

**If you want your vote to count, you must complete and return this ballot to Foster Garvey P.C., Attn: Tara J. Schleicher, Esq., 121 SW Morrison Street, 11th Floor, Portland, OR 97204-3141, or by email to tara.schleicher@foster.com, so that it is received no later than 5:00 P.M. (prevailing Pacific Time) on August 23, 2023. By completing this Ballot, you certify that you have the requisite authority to bind the creditor set forth below.**

16
17
18

**THIS FORM DOES NOT CONSTITUTE A PROOF OF CLAIM AND MUST NOT BE USED TO FILE A CLAIM OR TO INCREASE ANY AMOUNT LISTED IN THE DEBTOR'S SCHEDULES.**

19

The undersigned is the Holder of a Claim in Class 1 and votes on the Plan as follows:

20

[ ] Accepts the Plan            [ ] Rejects the Plan

21

Creditor: _____

22

By (Name/Title): _____

23

Dated: _____

24
25
26
27

---

[1] The last four digits of Debtor's federal tax identification number is 3750.

[2] Capitalized terms used but not defined in this Ballot shall have the meanings given to such terms in the Plan.

CLASS 1 BALLOT FOR VOTING ON THE DEBTOR'S
FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

Case 23-31455-dwh11    Doc 67    Filed 08/29/23

**EXHIBIT E2**

**CLASS 2.2 BALLOT**

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

In re:

Saturno Design, LLC.[4]

Debtor.

Case No. 23-31455-dwh11

**CLASS 2.2 BALLOT TO VOTE TO ACCEPT OR REJECT DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

You ("Holder") are receiving this Ballot because you are the Holder of a Priority Claim in Class 2.2 of the Debtor's First Amended Chapter 11 Plan of Reorganization dated July 24, 2023 (the "Plan").[5] The Plan sets forth the proposed treatment of your Claim. The Plan can be confirmed by the Bankruptcy Court for the District of Oregon (the "Court") and made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each impaired class voting on the Plan. If the requisite acceptances are not obtained, the Court may still confirm the Plan if the requirements of 11 U.S.C. § 1129 have been met.

**If you want your vote to count, you must complete and return this ballot to Foster Garvey P.C., Attn: Tara J. Schleicher, Esq., 121 SW Morrison Street, 11th Floor, Portland, OR 97204-3141, or by email to tara.schleicher@foster.com, so that it is received no later than 5:00 P.M. (prevailing Pacific Time) on August 23, 2023. By completing this Ballot, you certify that you have the requisite authority to bind the creditor set forth below.**

**THIS FORM DOES NOT CONSTITUTE A PROOF OF CLAIM AND MUST NOT BE USED TO FILE A CLAIM OR TO INCREASE ANY AMOUNT LISTED IN THE DEBTOR'S SCHEDULES.**

The undersigned is the Holder of a Claim in Class 2.2 and votes on the Plan as follows:

[ ] Accepts the Plan                    [ ] Rejects the Plan

Creditor: _____

By (Name/Title): _____

Dated: _____

---

[4]     The last four digits of Debtor's federal tax identification number is 3750.

[5]     Capitalized terms used but not defined in this Ballot shall have the meanings given to such terms in the Plan.

CLASS 2.2 BALLOT FOR VOTING ON THE DEBTOR'S
FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

Case 23-31455-dwh11    Doc 67    Filed 08/29/23

**<u>EXHIBIT E3</u>**

**CLASS 3 BALLOT**

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

Case 23-31455-dwh11    Doc 67    Filed 08/29/23

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re:

Saturno Design, LLC.[1]

Debtor.

Case No. 23-31455-dwh11

**CLASS 3 BALLOT TO VOTE TO ACCEPT OR REJECT DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

You ("Holder") are receiving this Ballot because you are the Holder of a General Unsecured Claim in Class 3 of the Debtor's First Amended Chapter 11 Plan of Reorganization dated July 24, 2023 (the "Plan").[2] The Plan sets forth the proposed treatment of your Claim. The Plan can be confirmed by the Bankruptcy Court for the District of Oregon (the "Court") and made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each impaired class voting on the Plan. If the requisite acceptances are not obtained, the Court may still confirm the Plan if the requirements of 11 U.S.C. § 1129 have been met.

**If you want your vote to count, you must complete and return this ballot to Foster Garvey P.C., Attn: Tara J. Schleicher, Esq., 121 SW Morrison Street, 11th Floor, Portland, OR 97204-3141, or by email to tara.schleicher@foster.com, so that it is received no later than 5:00 P.M. (prevailing Pacific Time) on August 23, 2023. By completing this Ballot, you certify that you have the requisite authority to bind the creditor set forth below.**

**THIS FORM DOES NOT CONSTITUTE A PROOF OF CLAIM AND MUST NOT BE USED TO FILE A CLAIM OR TO INCREASE ANY AMOUNT LISTED IN THE DEBTOR'S SCHEDULES.**

The undersigned is the Holder of a Claim in Class 3 and votes on the Plan as follows:

[ ] Accepts the Plan                    [ ] Rejects the Plan

Creditor: _____

By (Name/Title): _____

Dated: _____

---

[1] The last four digits of Debtor's federal tax identification number is 3750.

[2] Capitalized terms used but not defined in this Ballot shall have the meanings given to such terms in the Plan.

CLASS 3 BALLOT FOR VOTING ON THE DEBTOR'S
FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939 FAX (503) 226-0259

Case 23-31455-dwh11    Doc 67    Filed 08/29/23

# EXHIBIT F

**REDLINE (CHANGED PAGES ONLY) TO FIRST AMENDED PLAN**

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

Tara J. Schleicher, OSB No. 954021
Dan Youngblut, OSB No. 211148
FOSTER GARVEY P.C.
121 SW Morrison St., 11th Floor
Portland, OR 97204
Telephone: (503) 228-3939
Facsimile: (503) 226-0259
Email: ~~tara.schleicher@foster.com~~tara.schleicher@foster.com
dan.youngblut@foster.com
*Proposed Attorneys for Debtor*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re:

Saturno Design, LLC.[1]

               Debtor.

Case No. 23-31455-dwh11

**DEBTOR'S ~~FIRST~~SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

Debtor's ~~First~~Second Amended Chapter 11 Plan of Reorganization (as may be amended or modified from time to time, the "Plan") proposes to pay general unsecured creditors of debtor Saturno Design, LLC (the "Debtor" or "Saturno") over the Plan Period (as defined below). This Plan is an amended version of Debtor's Chapter 11 Plan of Reorganization [Dkt. No. 4], filed on July 3, 2023 (the "Original Plan")~~; the amendments are primarily minor clarifications and non-substantive changes~~, and of Debtor's First Amended Chapter 11 Plan of Reorganization [Dkt. No. 39], filed on July 24, 2023 (the "First Amended Plan"). The amendments in this Plan, relative to the First Amended Plan, only affect sections 9.2 (Injunction) and 9.4 (Exculpation) of the Plan (including the related removal of the defined term "Exculpated Parties"). None of these changes impact the treatment of any Claims against Debtor or any substantive terms of the Plan or adversely affect any rights of such the Holders of such Claims or any other parties in interest. A redline showing the changes in this Plan relative to the ~~Original~~First Amended Plan is attached hereto as Exhibit F. This Plan provides for one class of Secured Claims, three classes of

---

[1] The last four digits of Debtor's federal tax identification number is 3750.

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939 FAX (503) 226-0259

1.23. "Confirmation Order" means the order of the Court confirming the Plan.

1.24. "Court" means the United States Bankruptcy Court for the District of Oregon before which the Chapter 11 Case is pending, or any other court exercising jurisdiction over the Chapter 11 Case in the future.

1.25. "Cure" means a Claim based upon a Debtor's default(s) under an executory contract or an unexpired lease sought to be assumed by the Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to any relevant provision of the Bankruptcy Code or applicable law.

1.26. "Effective Date" means the first date that the Confirmation Order has become a Final Order and all conditions to the effectiveness of the Plan have been satisfied.

1.27. "Equity Interest" means any membership interest or similar "equity" security or interest in the Debtor.

1.28. "Estate" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code.

1.29. ~~"Exculpated Parties" means (a) the Debtor and its respective attorneys, consultants, advisors, and agents (acting in such capacity); (b) the Subchapter V Trustee and her respective attorneys, consultants, advisors, and agents (acting in such capacity); and (c) the United States Trustee and its respective attorneys, consultants, advisors, and agents (acting in such capacity).~~

1.29. ~~1.30.~~ "Final Order" means an order or judgment of the Court as to which the time for appeal has expired and a stay pending appeal has not been issued.

1.30. ~~1.31.~~ "Holder" means a person (including any assignees) holding an interest of any kind or Equity Interest in, or Claim against, the Debtor(s), as the context requires.

1.31. ~~1.32.~~ "IRS" means the Internal Revenue Service.

1.32. ~~1.33.~~ "Lawsuits" means the Seller Lawsuit and the T Bank Lawsuit.

1.33. ~~1.34.~~ "Lien" means any mortgage, lien, Claim, interest, encumbrance, security interest, restriction, charge, or assessment, of every kind, nature, and description, against, in or

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

executory contracts and unexpired leases shall be classified as Allowed Unsecured Claims under Class 4 of the Plan.

8.4.  <u>Full Release and Satisfaction</u>.  Assumption of any executory contract or unexpired lease pursuant to the Plan or otherwise and full payment of any applicable Cure shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of assumption.

## ARTICLE IX: EFFECT OF CONFIRMATION, DISCHARGE, AND INJUNCTION

9.1.  <u>Discharge</u>.  If the Plan is confirmed pursuant to section 1191(a) of the Bankruptcy Code, then on the Effective Date, without any further order from this Court, the Debtor will be discharged from any Claims, Causes of Action, and debts and liabilities of any nature whatsoever, whether known or unknown, that arose prior to the Effective Date, to the maximum extent permitted by section 1141(d) of the Bankruptcy Code.  If the Plan is confirmed pursuant to section 1191(b) of the Bankruptcy Code, then upon the expiration of the Plan Period with the Debtor having satisfied all of its obligations under this Plan, and without any further order from this Court, the Debtor will be discharged from any Claims, Causes of Action, and debts and liabilities of any nature whatsoever, whether known or unknown, that arose prior to the Effective Date, to the maximum extent permitted by sections 1141(d) and 1192 of the Bankruptcy Code. For the avoidance of doubt, the discharge set forth in this section 9.1 shall not discharge or affect any Claims relating to Professional Fees and Expenses and the Subchapter V Trustee Claim or, if applicable, any Claims of the kind specified in section 523(a) of the Bankruptcy Code.

9.2.  <u>Injunction</u>.  Except as otherwise expressly provided in this Plan, the documents executed pursuant to the Plan, or the Confirmation Order, on or after the Effective Date, all persons and entities who have held, currently hold, or may hold Claims against or interests in the Debtor, the Assets, or the Debtor's Estate that arose prior to the Confirmation Date (including, but not limited to, states and other governmental units, and any state official, employee, or other

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

entity acting in an individual or official capacity on behalf of any state or other governmental units) are ~~permanently and forever~~ enjoined from, on account of such Claims or interests _and only to the extent consistent with 11 USC § 524(e)_: (i) commencing or continuing in any manner, ~~directly or indirectly,~~ any action or other proceeding against the Debtor, the Reorganized Debtor, or any Assets of the Debtor or Reorganized Debtor; (ii) enforcing, attaching, executing, collecting, or recovering in any manner, ~~directly or indirectly,~~ any judgment, award, decree, or order against the Debtor, the Reorganized Debtor, or any Assets of the Debtor or Reorganized Debtor; (iii) creating, perfecting, or enforcing, ~~directly or indirectly,~~ any Lien of any kind against the Debtor, the Reorganized Debtor, or any Assets of the Debtor or Reorganized Debtor; _and_ (iv) asserting or effecting, ~~directly or indirectly,~~ any setoff, right of subrogation, or recoupment of any kind against obligations due to the Debtor, the Reorganized Debtor, or any Assets of the Debtor or Reorganized Debtor; ~~and (v) acting, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with any provisions of this Plan~~. Any person or entity injured by any willful violation of this injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. Nothing contained in this Article IX shall prohibit the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of the Debtor under this Plan. ~~The Confirmation Order shall also constitute an injunction enjoining any person from enforcing or attempting to enforce any Claim or cause of action against the Debtor or any Assets of the Debtor based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Claim on which the payments due under this Plan have been made or are not yet due under this Plan.~~

9.3. _Lifting of Automatic Stay and All Other Temporary Injunctions_. Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939 FAX (503) 226-0259

this Chapter 11 Case by order of the Court, whether under sections 105 or 362 of the Bankruptcy Code, this Plan, or otherwise, shall remain in full force and effect until the Effective Date, at which point the terms of this Plan and the Confirmation Order shall then control.

9.4. ~~Exculpation. The Exculpated Parties shall not have or incur any liability to any entity or person for any act taken or omitted to be taken in relation to this Chapter 11 Case, including, but not limited to, with respect to the formulation, preparation, dissemination, implementation, confirmation, or approval of this Plan, or any contract, instrument, release, or other agreement or document provided for or contemplated in connection with the consummation of any transactions or actions to be taken in~~

~~connection with this Plan; *provided, however*, that the provisions of this section shall not affect the liability of any entity or person that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct. Any of the Exculpated Parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan~~Intentionally Omitted.

9.5. <u>Termination of Cash Collateral Order</u>. On the Effective Date, the Cash Collateral Order (or any extension, supplement, or modification thereof) shall be of no further force and effect, and the Debtor shall be authorized to use Cash Collateral (as defined in the Cash Collateral Order) without, among other restrictions or conditions, any further order from this Court or any need to provide adequate protection (as such term is defined in the Bankruptcy Code) to T Bank, the SBA, or to any other party.

**ARTICLE X: RETENTION OF JURISDICTION**

To the maximum extent permitted by 28 U.S.C. § 1334 and the Bankruptcy Code, the Court shall retain jurisdiction with respect to the following matters:

(a) To adjudicate all controversies concerning the classification, allowance, or determination of any Claim or interest, including, without limitation, any Administrative Claim;

**FOSTER GARVEY PC**
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259

continue to operate and manage the businesses and Assets of the Debtor on a day-to-day basis and in a manner substantially similar to prepetition operations.

### ARTICLE XII: MODIFICATION OF THE PLAN

The Debtor may modify this Plan to the maximum extent permitted by the terms and conditions of section 1193 of the Bankruptcy Code. If the Plan has been confirmed, any Holder of a Claim or interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Court, such Holder changes the previous acceptance or rejection of the Holder.

### ARTICLE XIII: CONDITIONS PRECEDENT TO EFFECTIVE DATE

The Plan shall not become effective, and the Effective Date shall not occur, unless and until the Confirmation Order shall have been entered by the Court and shall have become a Final Order. The Debtor shall file a "Notice of Effective Date" (or similar document) on the docket upon the occurrence of the Effective Date.

Respectfully submitted:

Dated: ~~July 24~~August 29, 2023

*Rodolfo Bozas*

Rodolfo (Rudy) Bozas
Managing Partner of Saturno Design, LLC

FOSTER GARVEY PC
121 SW MORRISON STREET, ELEVENTH FLOOR
PORTLAND, OREGON 97204
PHONE (503) 228-3939  FAX (503) 226-0259